**Lloyd Virgil SAYLOR, Petitioner–Appellant,**

v.

**Clarence CORNELIUS, Judge, Harlan County Circuit Court; the Commonwealth of Kentucky; and the Attorney General of Kentucky, Respondents–Appellees.**

**No. 87–5327.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1987.

Decided May 9, 1988.

C. McGehee Isaacs, Asst. Public Advocate, Dept. of Public Advocacy, Mark A. Posansky (argued), Frankfort, Ky., for petitioner-appellant.

David Armstrong, Atty. Gen. of Ky., Robert W. Hensley (argued), Frankfort, Ky., for respondents-appellees.

Before NELSON and BOGGS, Circuit Judges; and ALLEN, Senior District Judge.[*]

BOGGS, Circuit Judge.

Lloyd Virgil Saylor was indicted on one count of murder. The indictment encompassed murder as a principal and as an accomplice, and murder by conspiracy. At his trial under this indictment, considerable evidence was introduced supporting his liability as an accomplice of the actual murderer. No evidence, however, was introduced to show that he participated in any conspiracy to commit the murder.

Despite the lack of evidence of a conspiracy, the trial judge instructed the jury on the murder count (and various lesser offenses) only on the theory of Saylor's liability as a conspirator.[1] The prosecution did not object to these instructions nor did it request any charge on Saylor's accomplice liability. Saylor, however, did object to any instructions involving a conspiracy at an instruction conference held off the record. The jury found Saylor guilty of murder. Saylor's conviction was reversed on appeal by the Kentucky Supreme Court on the ground that the evidence was insufficient to support the conspiracy instructions and resulting conviction. *Saylor v. Commonwealth of Kentucky*, No. 82–SC–153–MR, slip op. at 3 (Ky. April 19, 1984).

---

[*] The Honorable Charles M. Allen, Senior District Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

1. Jury Instruction No. 2 stated:
 You will find the Defendant guilty of murder under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
 (a) That in this County on or about December 21, 1980 ... either the Defendant Lloyd Virgil Saylor or Ernest 'Cheetah' Jones or both struck Charles Smith, Jr., alias Boogie Turner, in the head with a metal pipe and thereby killed him.

 (b) That in so doing the Defendant, Lloyd Virgil Saylor, or Ernest 'Cheetah' Jones was acting pursuant to, in furtherance of and during the continued existence of a conspiracy in which the Defendant, Lloyd Virgil Saylor[,] and Ernest 'Cheetah' Jones had agreed that one of them would murder Charles Smith, Jr., alias Boogie Turner. . . .
 The court gave similar instructions premising liability for first degree manslaughter (Instruction No. 3), for second degree manslaughter (Instruction No. 4), and for reckless homicide (Instruction No. 5), solely upon a determination that Saylor and Jones conspired to kill Smith/Turner.

In a subsequent opinion, the Kentucky Supreme Court specifically held that Saylor could be retried, based on the theory of accomplice liability. The state supreme court concluded that the trial court merely committed instructional error when it failed to instruct the jury on the alternative theory of guilt, accomplice liability for aiding and abetting the murderer. *Saylor v. Commonwealth of Kentucky*, No. 82–SC–153–MR, slip op. at 3–4 (Ky. July 5, 1984).

After his petition for a writ of certiorari was denied by the United States Supreme Court, Saylor filed a petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254, claiming that a retrial was barred by the Double Jeopardy Clause. The district court rejected his petition, agreeing with the Kentucky Supreme Court's conclusion that the trial court merely committed instructional error and that the Double Jeopardy Clause does not prohibit a retrial when a conviction is reversed for instructional error.

 We conclude that the Double Jeopardy Clause does bar Saylor's retrial. The accomplice theory of liability was charged in the indictment, was relevant to the evidence presented during the trial, and most importantly, up until the time the jury returned from its deliberations and announced its verdict, could have been presented to the jury. Under circumstances such as these, where the first trial ended without a verdict on the relevant charge for reasons of the prosecution's making, a retrial on that charge would violate the protection the Double Jeopardy Clause affords against harassing reprosecution. Ac-

cordingly, Saylor's petition for a writ of habeas corpus is granted.[2]

I

Saylor contends that the holding by the Kentucky Supreme Court that there was insufficient evidence to support the only charge on which the jury was instructed means there was insufficient evidence to support any theory of liability, and therefore that the Double Jeopardy Clause bars his retrial. *E.g., Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed. 1 (1978).

The state contends that the Kentucky Supreme Court merely held that the jury received erroneous instructions and that it is black-letter law that when a conviction is reversed for trial error, the defendant may be retried. *See, e.g., North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969).[3]

Neither of these paradigms is persuasive, however. The "insufficiency of the evidence" principle is meant to insure that the prosecution only gets one bite at putting on its best factual case. *See Burks*, 437 U.S. at 11, 98 S.Ct. at 2147; *accord Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). When that attempt proves to be legally insufficient, the state cannot get another opportunity to seek a conviction.

Here, however, there was no finding by the state appellate court that the evidence was insufficient to convict on a proper charge. Rather, that court simply found that no such charge ever was given. Thus, Saylor cannot extricate himself from a retrial based only on the fact that the evi-

---

**2.** The state contends that because Saylor's first conviction has been overturned, he is not "a person in custody pursuant to the judgment of a State court" under 28 U.S.C. § 2254(a), and consequently, not entitled to seek a writ of habeas corpus at this time. This contention is erroneous. Saylor "is under an obligation to appear for trial," *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984), and, thus, is "in custody" for the purpose of seeking habeas relief. *Ibid.*

**3.** The Court explained in *Burks*,
reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government

has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.
*Burks*, 437 U.S. at 15, 98 S.Ct. at 2149.

dence was held by the Kentucky Supreme Court to be legally insufficient to sustain a charge of murder *as an accomplice.*

On the other hand, this is not a standard "instructional error" case, either. The jury did not convict on an erroneous theory about accomplice liability. Rather, the jury did not convict on a theory of accomplice liability at all, since that issue was not included in the charge to the jury. In "instructional error" cases we know that the jury thought there was sufficient evidence to convict *on the offense charged* because the jury returned a guilty verdict. However, due to a procedural error, the defendant is entitled to a retrial. *See, e.g., Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960). Here, we have no notion what the jury thought about the evidence concerning the accomplice liability count because the issue never was offered for the jury's consideration.

Thus, the analytical difficulty in this case arises from the fact that Saylor neither was convicted nor was acquitted on the crucial theory of murder as an accomplice. Had he been convicted on that theory, as he was on the theory of murder by conspiracy, he certainly could be retried if the conviction was reversed for a procedural reason. In such a scenario, the jury would have found a factual basis for the conviction, but an appellate court, determining that a significant procedural error had occurred during the proceedings, would reverse the conviction and order a retrial. A reversal under such circumstances, however, effectively prevents the "jeopardy" attached to the first trial from ending. Consequently, a retrial in such a situation simply would involve the same jeopardy which was attendant to the first trial, and therefore, would not have the effect of putting Saylor in a "second" or "double" jeopardy of being convicted of murder as an accomplice.

Conversely, had the accomplice liability theory been presented to the jury and had the jury acquitted Saylor, the original jeopardy attendant to the first trial clearly would have terminated, and Saylor could not, under any circumstances, be tried again on that theory of liability for the murder without being twice placed in jeopardy. *See, e.g., United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896) ("A verdict of acquittal … [may] not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy and thereby violating the Constitution").

What happened here most accurately is described as a termination of the jeopardy in which Saylor had been placed at the start of the trial, without a conviction or an acquittal, but a termination nonetheless. This termination occurred because of the state trial court's legal error (concurred in by the prosecution) in failing to charge the jury on the theory of murder as an accomplice. Had the court ordered an outright acquittal on that theory during the trial, the original jeopardy attendant to Saylor's trial would have ended as far as that theory was concerned and a retrial on that theory clearly would constitute double jeopardy, even if the court's ruling later was held to be legally erroneous. *See, e.g., Sanabria v. United States,* 437 U.S. 54, 69, 78, 98 S.Ct. 2170, 2181, 2186, 57 L.Ed.2d 43 (1978) (citing cases). Once the jury returned its verdict, the failure to instruct on the accomplice liability theory terminated Saylor's jeopardy as effectively as the other results discussed above. To deny this proposition would mean that the prosecution could proceed on several theories of liability throughout a trial, and, simply by withholding instructions on any one of them, reserve that theory for retrial at a later date.

For example, suppose a defendant is indicted and tried for the murders of Johnson and Williams. The defendant is in jeopardy of being convicted of both murders right up to the time the jury returns its verdict. If the judge instructed the jury on only one of the murders, and the other murder could be used as a second string to the prosecution's bow for later retrial, it would negate completely the basic intention of the Double Jeopardy Clause that a person may not be tried again for the same offense when the prosecution has put him in jeopardy

and the prosecution has terminated that jeopardy without result.

In essence, this case falls in the gap between the two theories we are asked to choose between. Therefore, we must go back to basic principles of double jeopardy law to attempt a resolution.[4]

## II

One basic principle, first established in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), is that once jeopardy has attached and a mistrial declared before a verdict is delivered, a defendant may not be retried on any matter with which he was charged, or on a greater or lesser offense, unless there was a "manifest necessity" for declaring the mistrial.[5] Thus, "manifest necessity" has justified declaring a mistrial (and consequently, a new trial was not barred by the Double Jeopardy Clause,) due to

> the illness of a juror, the trial judge, or the defendant; the absence of a juror; the illness or death of a member of a juror's family; the service of a juror on the grand jury which indicted the defendant; false statements of a juror on voir dire which prevent the defendant from obtaining a fair trial; the improper separation of the jury; the assassination of a President of the United States on the first day of trial; a remark or comment by counsel or the trial judge which is so prejudicial as to prevent defendant from obtaining a fair trial; the newspaper publication of a letter which would render jury impartiality doubtful; the inabil-

ity of the jury to agree upon a verdict; or the dismissal of an indictment which is so defective that it could not have supported a judgment on the verdict.

I Wharton's Criminal Law § 61 (14th Ed. 1978 & Supp.1987) (footnotes with citations omitted).

Another basic principle, already noted above, is that if a defendant is acquitted of a charge, the proscription against retrial is absolute. *See, e.g., United States v. DiFrancesco*, 449 U.S. 117, 127–30, 101 S.Ct. 426, 432–33, 66 L.Ed.2d 328 (1980) (citations omitted). Thus, an acquittal bars retrial even if "based upon an egregiously erroneous foundation," *Sanabria v. United States*, 437 U.S. at 64, 98 S.Ct. at 2178 (quoting *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962)), or if it is inconsistent with other aspects of a jury's verdict. *United States v. Powell*, 469 U.S. 57, 64–65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984).

However, it is equally axiomatic that the only time a reversal of a conviction is the equivalent of an acquittal as far as the applicability of the Double Jeopardy Clause's bar against retrial is concerned, is where the reversal is based on insufficiency of the evidence. *E.g. Burks*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed. 21; *see also Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982) ("A reversal based on the insufficiency of the evidence has the same effect [as a verdict of not guilty] because it means that no rational factfinder could have voted to convict the defendant"). Accordingly, "[t]he success-

---

**4.** The most important principle is the clause itself, which states "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. According to the Supreme Court, the clause provides three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. at 717, 89 S.Ct. at 2076 (footnotes omitted).

**5.** A leading constitutional annotation states:

> The phrase is derived from Justice Story's opinion in *United States v. Perez*, [22 U.S. (9

Wheat.)] 579, 580, 6 L.Ed. 165 (1824), in which, holding that a retrial was permissible when the trial judge declared a mistrial after the jury deadlocked in deliberations, he said: 'We think ... the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.'

Congressional Research Service, Library of Congress, The Constitution of the United States of America, Analysis and Interpretation 1095 n. 14 (1973).

ful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict ... poses no bar to further prosecution on the same charge." *United States v. Scott*, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 2193–94, 57 L.Ed.2d 65 (1978) (citation omitted).

Most of the Supreme Court's famous discussions of the Double Jeopardy Clause do not contemplate the situation where a trial ends without either an explicit conviction or an explicit acquittal. Thus, in *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 169, 21 L.Ed. 872 (1873), the Court refers to the "maxim that ... a former judgment for the same matter, whether to be in favor of the defendant or against him, is a good bar to an action."

However, while the Court has indicated that

> the primary purpose of the Double Jeopardy Clause [is] to protect the integrity of a final judgment ... [the] Court has also developed a body of law guarding the separate but related interest of a defendant in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made. Such interests may be involved in two different situations: the first, in which the trial judge declares a mistrial; the second, in which the trial judge terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence.

*United States v. Scott*, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978). This particular branch of double jeopardy jurisprudence was described most eloquently by the Court in *Green v. United States,* where the court stated, in oft-quoted language, that the state should not be permitted to use its resources and power to try to wear down a defendant. Specifically, the Court stated:

> The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.

\* \* \* \* \* \*

The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. at 187–88, 78 S.Ct. at 223.

In *United States v. Scott,* the Court had the opportunity to address directly the question of what result the Double Jeopardy Clause requires when a trial ends without a final determination of the defendant's guilt or innocence on a charge contained in the indictment but not presented to the jury. In *Scott,* the defendant was charged in a three-count indictment with distribution of narcotics. Before and during the trial, the defendant moved to dismiss two of the counts which stemmed from drug transactions unrelated to the third count, on the ground that his defense against those counts had been prejudiced by preindictment delay. At the close of the presentation of all the evidence, the court granted the defendant's motion and dismissed the counts without explaining its reasons for doing so. The third count was submitted to the jury which returned a verdict of not guilty.

The government then appealed the dismissal of the first two counts to this court. We dismissed the appeal on the ground that the Supreme Court's decision in *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), held that once jeopardy attaches in a trial, the Double Jeopardy Clause precludes the government from appealing a dismissal of an indictment, regardless of whether the dismissal was an acquittal on the merits or the result of a technical error in the proceedings.

Upon review of our decision, the Court overruled *Jenkins. Scott,* 437 U.S. at 87, 98 S.Ct. at 2191. Reiterating the *Green*

proposition that one purpose advanced by the Double Jeopardy Clause is protection against the vexatious effect of subjecting a defendant to multiple criminal trials, the Court again acknowledged that the clause's protection against successive trials when a defendant has been acquitted, "however mistaken the acquittal may have been," is absolute. *Scott,* 437 U.S. at 91, 98 S.Ct. at 2194.

However, the Court drew a dichotomy between trials aborted as a result of the defendant's deliberate election and those ending as a result of the prosecution's action. Thus, the Court stated that where there is a mistrial or a charge in the indictment is dismissed, for reasons other than the fact that the government has failed to establish the defendant's guilt, and the action favorable to the defendant comes about as a result of the defense's own motion, the *Green* proposition does not apply. The Court explained that the situation

> where the government [is] quite willing to continue with its production of evidence to show the defendant guilty ... but the defendant [elects] to seek termination of the trial on grounds unrelated to guilt or innocence.... is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact.

Scott, 437 U.S. at 96, 98 S.Ct. at 2196. Accordingly, the Court held that if an appellate court determined that the trial judge erred in dismissing the counts in the indictment, the defendant in *Scott* could be retried on those charges. *Scott,* 437 U.S. at 100–01, 98 S.Ct. at 2198–99.

### III

Saylor's case falls between the two poles established in *Scott* because the termination of the accomplice liability charge was not directly of his making or of the prosecution's. However, we are aided in making a determination of the appropriate resolution of this case by the Court's reasoning in *Scott.*

Here, the ending of the trial without a conviction of the defendant was certainly, in one sense, due to the action of the prosecution. The prosecution examined the original suggested charge, the prosecution did not object to the judge's charge and the prosecution was aware that the defense objected to the charge on the ground that no evidence showing conspiracy had been presented. Thus, a majority of the circumstances indicates that, due to the prosecution's acquiescence in the instructions given, the prosecution should bear the burden of the aborted outcome.

Unlike the defendant in *Scott,* Saylor made no deliberate election to abort the trial. Even more significant is the fact that the defense implicitly pointed out the prosecution's instructional error by objecting to the proposed conspiracy instructions. The defense did not "lie in the weeds" and simply wait for an appellate reversal on this point. While it is true that the defense did not stand up and demand that the judge charge the jury on the additional theory of accomplice liability, the defense lawyer hardly can be faulted for not having done the prosecutor's job. In addition, we are not faced with the situation depicted by the Court in *Scott,* that

> of a defendant who [chose] to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.

Scott, 437 U.S. at 96, 98 S.Ct. at 2196.

■ The fact remains that Saylor was put to the expense and jeopardy of a full trial and that the essential result of the trial was favorable to Saylor on the charge of being an accomplice to murder. The jury did not return an actual verdict on that charge through no fault of the defense. In these circumstances, both sides had a single fair trial, which should bar reprosecution. *See* Notes and Comments, *Twice in Jeopardy,* 75 Yale L.J. 262, 277 (1965). It is well settled that the prosecu-

tion does not have the opportunity to try a defendant again simply in order to get better facts before the jury, or where its failure was a result of poor preparation. *See* 75 Yale L.J. at 287 n. 124. We see no reason why the prosecution should be allowed to try a defendant again merely because it did not realize during the trial that the only theory of liability established by the evidence had not been charged to the jury.

What we have here is a failure to convict as a result of a legal inadequacy rather than a factual one. From one perspective, this case is quite similar to the classic situation in which a second trial is not permitted because the first jury could have reached a decision, had it not been for illegitimate prosecutorial behavior. *See* 75 Yale L.J. at 287 & n. 123. In this case the prosecution's action, though not affirmatively illegitimate, certainly was in error. Just as the British empire was said to have been obtained in "a fit of absentmindedness," the prosecutor here, in a similar "fit of absentmindedness," effectively terminated Saylor's liability for being an accomplice to murder.

Although there is no evidence that the prosecutor here acted deliberately, permitting a retrial in this case or in any similar case would be fraught with the possibility of manipulation. A prosecutor could indict on several counts or theories, present evidence on each of them, and then go to the jury only on selected ones, in effect holding the others in reserve for a subsequent or improved effort. If Saylor could be retried on a theory on which no verdict was reached because it was not charged, it would seem that such a retrial should be available no matter what the outcome on the count that was charged. As there is no necessary logical nexus between the two theories contained in the indictment, a retrial might be permitted whether Saylor was convicted and the conviction affirmed, convicted and the conviction reversed for procedural error, convicted and the convic-

tion reversed for insufficiency (the case here—a functional acquittal on the conspiracy theory), or, in fact acquitted.

We believe that the Double Jeopardy Clause forbids a second trial on the accomplice liability theory because such a trial would be vexatious, regardless of the outcome of the jury's deliberation on the theory charged to it. It would be vexatious because the defendant underwent the jeopardy of a full trial, which is even more vexatious than the aborted or partial trials usually involved in double jeopardy cases, *see* 75 Yale L.J. at 288 n. 125; *accord Scott,* 437 U.S. at 99–101, 98 S.Ct. at 2198, and the trial failed to terminate in a verdict for reasons that cannot fairly be charged to the defendant.

## IV

These principles lead us to conclude that the circumstances of Saylor's conviction, and of the subsequent reversal of that conviction, entitle Saylor to the protection of the Double Jeopardy Clause against further prosecution for this murder under an accomplice theory of liability. We emphasize, however, that we do not hold that the evidence was legally insufficient in this case to have convicted Saylor of liability as an accomplice to murder. Indeed, the very reason his conviction for murder involving conspiracy was overturned by the state supreme court was because nearly all the evidence introduced at trial focused on Saylor's accomplice liability. Had the jury been presented with the accomplice theory, a guilty verdict could not have been overturned on the ground that it was unsupported by legally sufficient evidence.

Rather, our conclusion is based on the fact that jeopardy had attached in Saylor's trial and that right up until the moment that the jury's verdict was announced[6], Saylor was in considerable jeopardy of being convicted of murder as an accomplice.

---

**6.** Saylor still was in jeopardy of being convicted of murder as an accomplice while the jury deliberated because the court or the prosecution could have realized during that time that the jury had not been charged on the accomplice theory and, consequently, supplemental instructions could have been provided.

The state had the option of presenting the jury with a number of theories of criminal liability. It chose to present the jury with the conspiracy theory and, whether inadvertently or not, it failed to present the jury with the accomplice theory, despite the fact that it clearly could have done so. The prosecution's failure to request, and the judge's failure to give instructions on a particular theory of criminality cannot, *nunc pro tunc*, erase the defendant's jeopardy.

Thus, Saylor already has been in jeopardy of being convicted of accomplice liability for murder. The state had its opportunity to put its best proof and theories of criminality before the jury and it is not entitled to a second chance. Accordingly, the petition for a writ of habeas corpus is GRANTED.