16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Frank RUNNELS, Defendant-Appellant.
 No. 93-1502.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1994.
 
 Before: NELSON and BATCHELDER, Circuit Judges, and MATIA, District Judge.*
 PER CURIAM.
 
 
 1
 This is a mail fraud case that has been here before. The defendant was successfully prosecuted in 1986 on an "intangible rights" theory; the government contended, and the jury found, that the defendant had conspired to use the mails, and had in fact used the mails, to defraud a labor union and its members of their right to have the union's business conducted honestly. (As the president of the union, the defendant had allegedly steered workers' compensation claims to attorneys from whom he received substantial payoffs.) The Supreme Court subsequently repudiated the intangible rights theory in McNally v. United States, 483 U.S. 350 (1987), and our court vacated the defendant's conviction on the strength of McNally. See United States v. Runnels, 877 F.2d 481 (6th Cir.1989) (en banc). The defendant was then reindicted for the same crimes; the new indictment was based on the theory that the defendant had used the mails to defraud his victims of money. Again the defendant was convicted, and again he has appealed.
 
 
 2
 We are asked to decide whether the second prosecution was barred by either the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution or the five-year statute of limitations that applies to mail fraud crimes, 18 U.S.C. Sec. 3282. Finding no bar, we shall affirm the conviction.
 
 
 3
 * The underlying facts of the case are summarized in our en banc opinion, and there is no need to repeat them here. It is useful to have the wording of the indictments in mind, however, and we shall quote excerpts in the following summary.
 
 
 4
 Count One of the original indictment said that from November of 1978 to January of 1983 the defendant, Frank Runnels, conspired with attorney Arnold Shapiro and others to use the mails "in furtherance of a scheme or artifice to defraud in violation of 18 U.S.C. Sec. 1341." The scheme was allegedly intended
 
 
 5
 "(a) to defraud the members of Local 22, United Auto Workers of the right to have the business of Local 22 conducted honestly, fairly, impartially, free from corruption, collusion, partiality, disloyalty, dishonesty and fraud; and
 
 
 6
 (b) to obtain money by means of false and fraudulent pretenses and representations, knowing and intending that the pretenses and representations were false and fraudulent when made for the purpose of obtaining money."
 
 
 7
 Count One went on to describe the scheme in detail and to list five overt acts--four meetings and a gift to defendant Runnels of $10,000 in cash--said to have been in furtherance of the conspiracy.
 
 
 8
 Count Two of the indictment alleged that defendant Runnels and attorney Shapiro utilized the mails for the purpose of executing the scheme to defraud, thereby violating 18 U.S.C. Sec. 1341. Count Two also accused Runnels of attempting so to use the mails, a violation of 18 U.S.C. Sec. 2.
 
 
 9
 The original indictment was returned on January 16, 1986. On May 28 of that year a jury found Mr. Runnels guilty on both counts. On September 13, 1989, pursuant to the mandate issued by this court in the en banc proceedings, the district court dismissed the indictment. A new indictment was returned on the same day.
 
 
 10
 Unlike its predecessor, the indictment returned in 1989 was not drawn on the theory that the defendant had defrauded the union and its members of the right to have the union's business conducted honestly. Instead, the new indictment alleged that from November of 1978 to June of 1983 defendant Runnels conspired to use the mails "in furtherance of a scheme and artifice to defraud and obtain money or property by means of false and fraudulent pretenses ... in violation of [18 U.S.C. Sec. 1341]." The intent of the scheme was now described as follows:
 
 
 11
 "(a) to defraud Local 22, and the members of Local 22, of the secret profits that the Defendant, FRANK RUNNELS, accepted from the law firms of Peter R. Barbara and Associates, P.C., and Bain and Shapero [sic], P.C., by and through their agents, partners, and employees, in connection with the official duties of the Defendant, FRANK RUNNELS, as President of Local 22. Since the Defendant, FRANK RUNNELS, served as an officer and in a fiduciary capacity on behalf of Local 22 and its members, these payments were property and money that rightfully belonged to Local 22 and its members; and
 
 
 12
 (b) to obtain money and property by means of false and fraudulent pretenses and representations from the members of Local 22 who, on the recommendation of the Defendant, FRANK RUNNELS, retained either the law firm of Peter R. Barbara and Associates, P.C., or the law firm of Bain and Shapero [sic], P.C., for the purpose of filing workers' compensation claims."
 
 
 13
 Defendant Runnels moved to dismiss the indictment on the grounds that the prosecution violated his Fifth Amendment double jeopardy and due process rights and his Sixth Amendment right to a speedy trial, and on the further ground that the prosecution was barred by the statute of limitations. The district court issued a 15-page opinion denying the motion, and in February of 1993 Mr. Runnels pleaded guilty to Count One of the new indictment pursuant to a plea agreement that preserved his right to appeal on double jeopardy and statute of limitations grounds. The district court entered a judgment and commitment order on March 19, 1993, sentencing Mr. Runnels to imprisonment for 24 months. A timely notice of appeal was filed on April 7, 1993.
 
 II
 
 14
 Mr. Runnels' double jeopardy argument, in essence, is this: that the original indictment was based both on the theory that the defendant had defrauded the union and its members of "intangible rights" and on the theory that he had defrauded them of money or property; that the case went to trial on both theories; that the government abandoned its money or property theory midway through the trial by stipulating that the money allegedly received by the defendant from the attorneys did not belong to the union or its members; and that under circumstances such as these, as this court recognized in Saylor v. Cornelius, 845 F.2d 1401 (6th Cir.1988), a new prosecution based on the money or property theory would violate the strictures of the Fifth Amendment by putting the defendant in jeopardy twice for the same offense.
 
 
 15
 In support of the premise on which this argument rests, defendant Runnels points out that the government itself, in attempting to salvage the original conviction after the Supreme Court handed down its decision in McNally, told the en banc court in the appellate proceedings that "the government was charging a deprivation of both tangible rights as well as intangible political rights." Moreover, Runnels says, the trial court, in denying the motion to dismiss the original indictment, expressed itself as "unconvinced that the money was not, in a sense, paid by the union members," the attorneys' compensation having come from the members. "Thus," said the trial court, "the members were indirectly paying Runnels." Also evidencing an understanding that the original indictment had alleged a deprivation of property rights, Runnels says, was the mid-trial stipulation in which the government abandoned its money or property theory by acknowledging that any monies claimed to have been paid to defendant Runnels by the attorneys were the sole property of the attorneys and not the property of the union or its members.
 
 
 16
 Mr. Runnels has his facts right--the government made the argument on appeal that he says it made, just as the trial court said what he says it said and the stipulation provided what he says it provided--but Runnels' argument fails because the en banc court squarely rejected the contention that the original prosecution had been based on more than a deprivation of intangible rights. "[W]e conclude," said the en banc court at 877 F.2d 484-85, "that the only theory on which the government indicted and prosecuted Runnels was the intangible rights theory." (Emphasis supplied.) The original indictment did, to be sure, allege that the intent of the scheme to defraud was to obtain money by means of false pretenses, but the en banc court concluded, rightly or wrongly, that
 
 
 17
 "[O]ne must read the indictment as charging Runnels with obtaining money for himself by devising a scheme which resulted in depriving the union members of their right to an honestly-run union. This clearly is an intangible rights theory." Id. at 490 (emphasis supplied, footnote omitted).
 
 
 18
 Judge Boggs, who wrote a dissent in which three other judges joined, accurately characterized this passage as a "holding" that the indictment alleged "solely an intangible rights theory." Id. at 492. Judge Keith, who concurred in the majority opinion but wrote separately as well, thought it "readily apparent that the government simply did not proceed on any theory other than a deprivation of 'intangible rights.' " The government's "post-hoc argument that this case proceeded on two theories," Judge Keith wrote, represented a violation of the government's obligation to state the record fairly. Id. at 491.
 
 
 19
 The holding by a majority of the en banc court that the only theory on which Mr. Runnels had been indicted and prosecuted originally was an intangible rights theory represents the law of the case. This panel is bound by it, just as Mr. Runnels is.
 
 
 20
 Because we must take it as given that Mr. Runnels was not prosecuted on a deprivation of property theory in 1986, the situation presented is indistinguishable from that presented in United States v. Davis, 873 F.2d 900 (6th Cir.), cert. denied, 493 U.S. 923 (1989). In Davis, as in the case at bar, the defendant was charged with mail fraud in a 1986 indictment based on the intangible rights theory. A jury found the defendant guilty, but his conviction was reversed after the Supreme Court disavowed the intangible rights theory in McNally. The defendant was reindicted for the same crimes on a deprivation of property theory, and the district court denied a motion in which the defendant sought dismissal of the charges on double jeopardy and statute of limitations grounds. We affirmed this ruling on appeal, holding that the general prohibition against successive prosecutions does not prevent the government from proceeding anew against a defendant who has succeeded in getting his first conviction set aside as the product of a defective legal theory. Davis is controlling here. Saylor v. Cornelius, 845 F.2d 1401 (6th Cir.1988), on which Mr. Runnels relies, is not controlling here for the same reasons that we held it not to be controlling in Davis. See Davis, 873 F.2d at 904-907.
 
 
 21
 Before leaving the double jeopardy issue, we have a further observation to make on the factual stipulation that was read to the jury in Mr. Runnels' 1986 trial. The stipulation, as we have said, provided that the monies allegedly received by Runnels belonged to the attorneys and not the union or its members. If the government were bound by this stipulation in a subsequent prosecution, it might be arguable that the government would be precluded from proceeding on any theory other than intangible rights--something that would be impermissible, obviously, under McNally and under the Double Jeopardy Clause.
 
 
 22
 The short answer to any such concern is that unless the parties to a factual stipulation have manifested an intent to be bound by the stipulation in subsequent proceedings, they are not so bound. Restatement (Second) of Judgments, Sec. 27, cmt. e. There is no evidence of any such intention here, so the government would not have been precluded from attempting to persuade a second jury that the money used in making the payoffs was the rightful property of the union or its members. See In re Daley, 776 F.2d 834, 838 (9th Cir.1985), cert. denied, 476 U.S. 1159 (1986); Jackson Jordan, Inc. v. Plasser American Corp., 747 F.2d 1567, 1575-77 (Fed.Cir.1984).
 
 III
 
 23
 The statutory limitations period for mail fraud prosecutions is five years, see 18 U.S.C. Sec. 3282, and Mr. Runnels' second indictment was not returned until more than five years after the offense was alleged to have been committed. Congress has enacted a savings provision, however, which, as amended in 1988, reads in pertinent part as follows:
 
 
 24
 "Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final.... This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution." 18 U.S.C. Sec. 3288.
 
 
 25
 Like the district court, we read this language as authorizing the new indictment at issue here.
 
 
 26
 There has been no contention that the original indictment was barred by the statute of limitations, and the new indictment was returned within 60 days of the dismissal of the original indictment. Under the plain language of the statute, therefore, the filing of the new indictment was permissible unless the reason for which the original indictment was dismissed was one that would bar a new prosecution. As explained in the preceding section of this opinion, the original indictment was not dismissed for a reason that would bar a new prosecution--it was dismissed because it rested solely on the intangible rights theory that the Supreme Court had disavowed in McNally.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation