[No. 55745-9-I.   Division One.   January 30, 2006.]

THE STATE OF WASHINGTON, *Appellant*, v. OLIVER WRIGHT, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Andrea R. Vitalich, Deputy,* for appellant.

*Jason B. Saunders* (of *Washington Appellate Project*), for respondent.

¶1 BECKER, J. — The State seeks to retry, on the charge of second degree intentional murder, a defendant whose felony murder conviction was vacated under *In re Personal*

*Restraint of Andress*[1] because it was for a then nonexistent crime. The charge of intentional murder was left undecided in the first trial because neither the State nor the defendant asked to have it submitted in the instructions to the jury. Because the defendant has not been acquitted of the murder, and he has obtained a reversal of his first conviction for a reason other than insufficient evidence, he remains in the same jeopardy that attached during the first trial. The order dismissing the second prosecution on double jeopardy grounds is reversed.

## FACTS

¶2 A man was shot dead in the street in Seattle in April 1993 in the course of an argument associated with a drug transaction. The State identified Oliver Wright as the shooter and charged him with a single count of second degree murder. The information also charged Wright with committing three counts of assault and robbery against different victims three days earlier. The information alleged the count of murder by alternative means: felony murder predicated upon second degree assault and intentional murder. The case went to trial later that year. At the end of the trial, both parties submitted felony murder instructions. No one proposed an instruction on intentional murder. On the charge of murder, the court instructed the jury only on felony murder. The jury found Wright guilty of felony murder and guilty on the assault and robbery charges as well. He went to prison on a 534-month standard range sentence. His conviction was affirmed on direct appeal.

¶3 Some years later, the Washington Supreme Court interpreted the former felony murder statute, RCW 9A-.32.050, and decided that the legislature did not intend for assault to serve as a predicate felony for second degree felony murder. *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). Along with others situated simi-

---

[1] *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002).

larly to the petitioner in *Andress,* Wright petitioned for relief from his conviction. The Supreme Court held that the petitioners were entitled to relief because they had been convicted of a nonexistent crime. *In re Pers. Restraint of Hinton,* 152 Wn.2d 853, 100 P.3d 801 (2004). The court vacated the convictions and remanded for further proceedings.

¶4 The State then renewed its prosecution of Wright for the 1993 homicide by amending the information so that the murder count alleged only second degree intentional murder. Wright moved to dismiss the charge as barred by double jeopardy. The trial court granted that motion. The State appeals.

## ANALYSIS

¶5 "No person shall be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.[2]

■ ¶6 The guaranty of the double jeopardy clause consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (footnotes omitted). There is no issue of multiple punishments in this case. The issue is successive prosecution.

¶7 The law "attaches particular significance to an acquittal." *United States v. Scott,* 437 U.S. 82, 91, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978). A verdict of acquittal ends a defendant's jeopardy for that offense and bars reprosecution for the same offense even if it is not reduced to judgment and even if it appears to be erroneous. *Green v.*

---

[2] The Washington State Constitution, article I, section 9, makes a similar guaranty: "No person shall be twice put in jeopardy for the same offense." No issue has been raised as to the possibility of an interpretation of the state constitution that would differ from the United States Constitution in these circumstances.

*United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1967); *Scott*, 437 U.S. at 91.

■ ■ ¶8 A conviction, on the other hand, does not necessarily act as a bar to a second prosecution for the same offense, for "it is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted." *United States v. Ball*, 163 U.S. 662, 672, 16 S. Ct. 1192, 41 L. Ed. 300 (1896). The *Ball* case "effectively formulated a concept of continuing jeopardy that has application where criminal proceedings against an accused have not run their full course." *Price v. Georgia*, 398 U.S. 323, 326, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970). "When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *Burks v. United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). The practice of retrial after reversal "serves defendants' rights as well as society's interest" because appellate courts would be less zealous in rooting out error "if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." *United States v. Tateo*, 377 U.S. 463, 466, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964). The rationale for retrial "rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *Pearce*, 395 U.S. at 721.

¶9 There can be no retrial, however, when the reason the appellate court reverses a conviction is insufficiency of the evidence. An appellate reversal for insufficient evidence is deemed to be an acquittal with the same effect as a verdict of acquittal because it "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Burks*, 437 U.S. at 16.

¶10 Wright contends that the appellate reversal of his murder conviction was equivalent to an acquittal. First, he

argues that felony murder convictions predicated on assault under the former statute are, according to *Andress*, based on legally insufficient evidence. This argument lacks merit. To determine whether insufficiency of the evidence was the reason why Wright's conviction was set aside, we look to the rationale of the reversing court. *See Parker v. Norris*, 64 F.3d 1178, 1182 (8th Cir. 1995). Nowhere in *Andress* did the Supreme Court adopt or imply a rationale of evidentiary insufficiency. Rather, the court engaged in statutory construction and concluded that Andress had been convicted of a nonexistent crime. *See Hinton*, 152 Wn.2d at 857. The problem of conviction for a nonexistent crime is not a failure of proof. *Montana v. Hall*, 481 U.S. 400, 107 S. Ct. 1825, 95 L. Ed. 2d 354 (1987) (defendant was erroneously convicted of incest under a statute that did not go into effect until after the date of the crime; reversal did not bar retrial on a charge of sexual assault under a more general statute).

¶11 Wright next argues that the 1993 jury, by finding him guilty of only felony murder, implicitly acquitted him on the alternative charge of intentional murder. In *Green*, on which Wright principally relies, the government tried the defendant on charges of arson and murder. On the murder count, the instructions gave the jury the choice of first or second degree murder. The jury found the defendant guilty of second degree murder. Their verdict was silent on the charge of first degree murder. The second degree murder conviction was reversed on appeal as unsupported by the evidence. The government reprosecuted Green for first degree murder and obtained a conviction. Green asserted former jeopardy, based not on his prior conviction, but on a theory of prior acquittal. He argued that the original jury's "refusal" to convict him of first degree murder was the same as an acquittal. *See Green*, 355 U.S. at 190 n.11. The Supreme Court, reversing on double jeopardy grounds, agreed that the first jury's verdict was an "implicit acquittal" on the charge of first degree murder.

Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder.

*Green*, 355 U.S. at 190.

¶12 It was critical to the rationale in *Green* that the first jury "was given a full opportunity to return a verdict" on the charge of first degree murder. *Green*, 355 U.S. at 191; *Price*, 398 U.S. at 329. A Washington case in the vein of *Green* is *State v. Hescock*, 98 Wn. App. 600, 989 P.2d 1251 (1999). After a bench trial, the court found a juvenile guilty of only one out of two charged alternative means of committing forgery. This court, after reversing that conviction for insufficient evidence, held that double jeopardy barred retrial on the other means as well because, as in *Green*, the trier of fact had not found the defendant guilty on that charge despite having a full opportunity to do so. *Hescock*, 98 Wn. App. at 611.

¶13 Wright's case differs materially from *Green* and *Hescock* in that the jury in Wright's trial did not have a full opportunity to find him guilty of intentional murder. The charge did not appear in the instructions. It simply dropped from the case. It cannot be said that the jury refused to convict him of intentional murder. That choice was not available. We therefore conclude the 1993 verdict was not an implicit acquittal as that concept is defined in *Green* and applied in *Hescock*, and it did not terminate Wright's jeopardy on the charge of intentional second degree murder.

¶14 As an alternative to his theory of former jeopardy based on an implied acquittal, or perhaps as a variation of that theory, Wright contends that the double jeopardy clause prevents the State from pursuing a charge on which there has never been a decision to acquit or convict because the State abandoned the charge during the first trial. For

this analysis, he relies on *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988).

¶15 *Saylor* is similar in that the defendant was charged with one count of murder, committed either by conspiracy or as an accomplice. The jury convicted him of conspiracy, the only theory submitted by the instructions. The conspiracy conviction was reversed for insufficiency of the evidence. The State then sought to retry the defendant as an accomplice. It was undisputed that the record contained sufficient evidence to convict the defendant as an accomplice. Nevertheless, the Sixth Circuit granted the defendant's petition to bar the retrial, reasoning that his jeopardy as an alleged accomplice terminated because "the first trial ended without a verdict on the relevant charge for reasons of the prosecution's making":

> The accomplice theory of liability was charged in the indictment, was relevant to the evidence presented during the trial, and most importantly, up until the time the jury returned from its deliberations and announced its verdict, could have been presented to the jury. Under circumstances such as these, where the first trial ended without a verdict on the relevant charge for reasons of the prosecution's making, a retrial on that charge would violate the protection the Double Jeopardy Clause affords against harassing reprosecution.

*Saylor*, 845 F.2d at 1403.

¶16 *Saylor* has been found inapplicable in another state court on facts very similar to Wright's case. *See People v. Daniels*, 187 Ill. 2d 301, 718 N.E.2d 149, 240 Ill. Dec. 668 (1999) (having charged defendant with both intentional and felony murder, State submitted only intentional murder instruction; intentional murder conviction reversed for trial error; State allowed to retry on both means). And a more recent decision by the Sixth Circuit distinguishes *Saylor* while retreating from it. *United States v. Davis*, 873 F.2d 900 (6th Cir. 1989). The prosecutor in *Davis* is described as having made a reasonable decision to proceed on a theory that appeared legally sound at the time, unlike the prosecutor in *Saylor* who is seen as having irrationally acqui-

esced to instructions on the one theory for which there was no evidence. *Davis*, 873 F.2d at 905.

¶17 If the *Saylor* analysis is correct in focusing on the prosecution's possibly illegitimate reasons for failing to submit the instruction as the essential justification for barring a second trial, Wright's case is distinguishable on the same basis as *Davis*. At the time the State allowed its case against Wright to go to the jury with only a felony murder instruction, 25 years of unbroken precedent established that felony murder predicated on assault was a sound and sufficient theory. Failing to submit an intentional murder instruction was not unreasonable.

¶18 However, we find *Saylor* not only distinguishable but also unpersuasive in its legal reasoning because it is not solidly tethered to the precedents it cites.[3] *Saylor* first invokes *Green* for its condemnation of successive prosecutions as vexatious:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green*, 355 U.S. at 187-88, *quoted in Saylor*, 845 F.2d at 1406. But *Green*, an implied acquittal case, does not lay down a general rule protecting against all successive prosecutions, and it does not specifically address the problem of a theory that is charged but not submitted for decision.

¶19 *Saylor* looks to *Scott* to show "what result the Double Jeopardy Clause requires when a trial ends without a final determination of the defendant's guilt or innocence on a charge contained in the indictment but not presented to the jury." *Saylor*, 845 F.2d at 1406. According to *Saylor*,

---

[3] This was also the view of District Court Judge Joseph P. Kinneary in the *Davis* case. *See United States v. Davis*, 714 F. Supp. 853, 857-62 (S.D. Ohio 1988).

*Scott* makes a distinction "between trials aborted as a result of the defendant's deliberate election and those ending as a result of the prosecution's action." *Saylor*, 845 F.2d at 1407. The prosecution should "bear the burden of the aborted outcome" if the omission of the charge from the jury instructions is attributable to the prosecution rather than to the deliberate election of the defendant. *Saylor*, 845 F.2d at 1407. *Scott* supports only part of this reasoning. *Scott* holds that double jeopardy does not bar retrial when it is the defendant who requests that a charge be left unresolved at the first trial (defendant Scott was "neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empanelled to try him"). *Scott*, 437 U.S. at 99. *Scott* does *not* hold that double jeopardy bars retrial when a charge is left unresolved at the first trial for some reason attributable to the prosecution.

¶20 *Saylor* concludes, citing a law review article, that retrial is barred even if the action by the prosecutor that prevents the first jury from reaching a decision is due to mere absentmindedness. *Saylor*, 845 F.2d at 1408. This is too broadly stated, for as the cited law review article acknowledges, in a case of mistrial declared due to prosecutorial misconduct, double jeopardy bars reprosecution only if the prosecutor precipitated the mistrial intentionally. Notes & Comments, *Twice in Jeopardy*, 75 Yale L.J. 262, 287 & n.123, cited in *Saylor*, 845 F.2d at 1408. *See also Oregon v. Kennedy*, 456 U.S. 667, 677, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). The law review author had in mind the very different facts of *Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963). At the first trial in *Downum*, after the jury was selected and sworn, the prosecutor failed to have on hand a witness needed for two out of the six charged counts. Over defense objection, the trial court refused to proceed on the four remaining counts and discharged the jury. A second jury, empaneled two days later despite the defendant's plea of former jeopardy, con-

victed the defendant. The Supreme Court reversed, reasoning that the prosecutor had entered upon the first trial without sufficient evidence to convict. *Downum*, 372 U.S. at 737.

¶21 Although Wright does not cite *Downum*, he echoes its reasoning when he theorizes that the State's failure to propose a jury instruction on intentional murder at the first trial may have been a deliberate choice to abandon that charge for lack of evidence to support it.[4]

¶22 Unlike in *Downum*, the record of Wright's trial does not allow even an inference that the State entered upon the case without sufficient evidence. An eyewitness testified that Wright put his arm around the victim and shot him several times at close range. This testimony was sufficient to convict Wright on either of the charged alternative means of second degree murder. Far from attempting to deprive Wright of a determination by the first jury, the State proceeded with the first jury and obtained a conviction.

¶23 If the first jury had acquitted Wright of felony murder, double jeopardy would bar a second prosecution on a theory of intentional murder whether it had been previously charged or not. The fact that Wright was not acquitted is what truly explains why he does not deserve the same outcome on appeal as the defendant in *Saylor*. The result obtained at trial in *Saylor* was actually an acquittal, not a conviction, because on appeal it was found to be based on insufficient evidence. A conviction, on the other hand, bars a retrial only if it becomes unconditionally final. When the conviction is reversed on procedural or technical grounds—as it was here, as well as in *Daniels*, the Illinois case—the first trial has not yet run its full course, and the accused remains in initial jeopardy. He "may be tried anew upon the same indictment, or upon another

---

[4] According to the law review article, *Downum* can be read as holding that doubts will be resolved in favor of the liberty of the citizen "where the actions of the state *may have been* designed to deprive the defendant of a determination by the initial jury and were not simply the result of negligence." Notes & Comments, *supra*, at 287 n.123.

indictment, for the same offence of which he had been convicted." *Ball*, 163 U.S. at 672.

¶24 Our conclusion that Wright remains in initial jeopardy for the accusation he faced during the first trial is not inconsistent with a Texas case Wright has submitted as supplemental authority. *Lewis v. State*, 889 S.W.2d 403 (Tex. App. 1994). Wright cites *Lewis* for the proposition that the abandonment of an accusation during trial amounts to an acquittal that bars later trial for the same offense. *Lewis*, 889 S.W.2d at 409.

¶25 As a general rule, Texas holds that in order to preserve a portion of a charging instrument for a later trial, the State must obtain permission from the trial judge to dismiss, waive, or abandon that portion of the charging instrument before jeopardy attaches. The double jeopardy clause does not permit "constructive abandonment" of a portion of the charging instrument. *Ex parte Preston*, 833 S.W.2d 515, 518 (Tex. Crim. App. 1992) (where State alleged three counts of robbery but submitted only one to the jury, and the conviction on that count was not appealed, State not permitted to retry on the two abandoned counts). But the general rule applies only if the State obtains a valid conviction in the first trial. "Although not necessarily articulated the reason for that rule is that when the State obtains a conviction for one offense out of two or more alleged in a single indictment, jeopardy has been terminated." *Ex parte McAfee*, 761 S.W.2d 771, 773 (Tex. Crim. App. 1988). Texas recognizes, as we do, that jeopardy has not terminated when criminal proceedings against an accused have not run their full course. *McAfee*, 761 S.W.2d at 773, Under *McAfee* and *Lewis*, as well as *Ball*, Wright's jeopardy on the single count of murder has not terminated because his conviction was reversed. This result is unaffected by the State's failure to formally preserve the intentional murder theory for a later trial.

¶26 In summary, Wright has never been acquitted, not even implicitly, for the 1993 murder. Now that he has obtained vacation of his second degree murder conviction

based upon that killing, traditional double jeopardy analysis holds that the slate is wiped clean. The State may try again to establish his culpability. Under the double jeopardy clause, the State's failure to request an intentional murder instruction in Wright's 1993 trial has no effect on the State's ability to proceed on that alternative now.

¶27 Aside from his double jeopardy argument, Wright also invokes the protection supplied by the court rules on mandatory joinder and speedy trial. The joinder rule, CrR 4.3.1, is a rule of pretrial procedure mandating consolidation of related offenses for trial. CrR 4.3.1(b)(3), the rule cited by Wright below, permits dismissal of a charge when a defendant has already been tried for a related offense. The State claims that Wright waived his remedy under CrR 4.3.1(b)(3) when, at the first trial, he did not move for "consolidation" of the intentional murder charge with the felony murder charge.

¶28 But the problem is not lack of pretrial consolidation of related offenses. The problem is that only one of the consolidated offenses was submitted to the jury for deliberation. We are not inclined to stretch the mandatory joinder rule and its waiver exception to cover an end-of-trial problem, as it does not appear the rule was intended to govern anything but pretrial procedure.

¶29 In a situation where the mandatory joinder rule clearly does apply, this court has already held that the "ends of justice" exception to CrR 4.3.1(b)(3) permits the State to bring new charges of manslaughter against a defendant whose felony murder conviction was vacated as the result of *Andress*. *State v. Ramos*, 124 Wn. App. 334, 101 P.3d 872 (2004).[5] If CrR 4.3.1(b)(3) did apply in Wright's

---

[5] Wright misreads *State v. Ramos*, 124 Wn. App. 334, 101 P.3d 872 (2004), when he claims it stands generally for the proposition that double jeopardy prohibits refiling murder charges on remand following *Andress*. He quotes one sentence on this subject in *Ramos*: "Double jeopardy prohibits retrial on the original charges." *Ramos*, 124 Wn. App. at 338. The sentence refers to the particular facts in *Ramos*. The "original charges" against both defendants were charges of first degree murder. *Ramos*, 124 Wn. App. at 336. They were convicted of second degree felony murder as a lesser included offense. Double jeopardy

situation, we would follow *Ramos* and hold that dismissal of the intentional murder charge would defeat the ends of justice.

¶30 The speedy trial rule, CrR 3.3, sets strict time limits within which the State must bring a defendant to trial on a pending charge. Wright's claim of a speedy trial violation depends on his premise that the time for trial on the intentional murder charge began to run back in 1993 at the time of his original arraignment. But the time for trial calculation begins anew when an appellate court issues a mandate or an order terminating a collateral proceeding such as Wright's. CrR 3.3(c)(2)(iv) and (v). And the computation of allowable time for trial of a pending charge "shall apply equally to all related charges." CrR 3.3(a)(5). Thus, the time for trial on the renewed prosecution for intentional murder charge began to run at the time of the order dismissing Wright's conviction for the related offense of felony murder. Wright's speedy trial argument is unfounded.

¶31 The order dismissing the second prosecution for intentional murder is reversed.

Cox, C.J., and Coleman, J., concur.

barred retrial for first degree murder because the jury verdict acquitted them on that charge both explicitly and implicitly.