[Nos. 78465-5; 78788-3.   En Banc.]
Argued May 22, 2007.     Decided March 26, 2009.

THE STATE OF WASHINGTON, *Respondent*, v. OLIVER MENARD WRIGHT, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. CINQUE RICHARD GARRETT, *Defendant*, DENNIS LAMAR BRYANT, *Petitioner*.

784

*David B. Koch* and *Christopher Gibson* (of *Nielsen, Broman & Koch, PLLC*); *Thomas M. Kummerow* (of *Wash-*

*ington Appellate Project*); and *Jason B. Saunders* (of *Gordon & Saunders, PLLC*), for petitioners.

Daniel T. Satterberg, *Prosecuting Attorney*, and *Andrea R. Vitalich* and *Jeffrey C. Dernbach, Deputies*, for respondent.

¶1 MADSEN, J. — In separate proceedings, the State tried Oliver Wright and Dennis Bryant (defendants) for second degree murder, charged as a single count under the statutory alternatives of intentional murder and felony murder based on assault. The jury returned a general verdict of guilt after receiving instructions only on the felony murder alternative. Following *In re Personal Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002), and *In re Personal Restraint of Hinton*, 152 Wn.2d 853, 100 P.3d 801 (2004), the Court of Appeals vacated the convictions. The defendants contend the double jeopardy clause prevents the State from retrying them for second degree intentional murder.

¶2 We find nothing in the double jeopardy clause that precludes the State from continuing its prosecution of the defendants for second degree murder under the intentional murder alternative. Their second degree felony murder convictions were vacated due to trial error, not insufficient evidence. The defendants were not impliedly acquitted of second degree intentional murder because their juries had no opportunity to consider their factual innocence of that charge. Finally, we reject the defendants' contention that jeopardy terminated when the jury was discharged without returning an express verdict on the intentional murder alternative. Applying well-established principles applicable to alternative means offenses, we hold the State's failure to submit a jury instruction on intentional murder has no effect on its ability to retry the defendants for that charge.

¶3 Because the defendants' convictions were reversed on grounds other than insufficient evidence, and because they have not been expressly or impliedly acquitted of intentional murder, they remain in the same jeopardy as attached at the first trial. Thus, we affirm the Court of Appeals' decisions remanding for retrial.

## FACTS

### Wright

¶4 On April 6, 1993, Oliver Wright killed Aisa Cameron during a drug transaction on a Seattle street. Wright and Cameron had been arguing. Wright put his arm around Cameron's neck, pulled him close, said, "Don't you know I shot you?" and then shot him in the chest at point blank range. 1 Videotape Recorded Proceedings (VRP) at 209.

¶5 The State charged Wright with one count of second degree murder under RCW 9A.32.050(1)(a) (intentional murder) and .050(1)(b) (felony murder predicated on assault).[1] Clerk's Papers (CP) (Wright) at 150.[2] However, the State proposed jury instructions only on the felony murder alternative. CP (Wright) at 95-96.[3]

---

[1] In the same information, the State charged Wright with three separate offenses involving different victims. Those charges are not at issue in this appeal.

[2] Count I of the information alleged that Wright,

while committing and attempting to commit the crime of Assault in the Second Degree, and in the course of and in furtherance of said crime and in the immediate flight therefrom, and with intent to cause the death of another person, did cause the death of Jeff Oscar Evans, Jr., aka Aisa Cameron, a human being, who was not a participant in said crime, and who died on or about April 6, 1993;

Contrary to RCW 9A.32.050(1)(a) and (b), and against the peace and dignity of the State of Washington.

CP (Wright) at 150.

[3] The to-convict instruction required the jury to find beyond a reasonable doubt:

(1) That on or about the 6th day of April, 1993, Jeff Oscar Evans, aka Aisa Cameron was killed;

(2) That the defendant was committing or attempting to commit assault in the second degree;

¶6 Following an off-the-record conference to go over the jury instructions, the court asked the parties whether they wished to enter any objections on the record. Wright did not take exception to the jury instructions. 3 VRP at 716.

¶7 The jury returned a general verdict of guilty on the second degree murder charge.

### Bryant

¶8 On August 6, 1994, Dennis Bryant shot Derek Burfect and Jacque Burns in a parking lot following the Seafair parade. Burns died as a result of his injuries. The State charged Bryant with one count of second degree murder under RCW 9A.32.050(1)(a) (intentional murder) and .050(1)(b) (felony murder predicated on assault), using language indistinguishable from that in Wright's case.[4]

¶9 As in Wright's case, the trial court instructed the jury only on the felony murder alternative, using the same pattern instructions. CP (Bryant) at 200, 213. Neither the prosecutor nor defense counsel took exception to the jury instructions. The jury returned a general verdict of guilty.

¶10 The defendants' second degree murder convictions were upheld on direct review. Following this court's decision in *Hinton*, however, the Court of Appeals granted the defendants' personal restraint petitions and vacated the convictions. In both cases, the State sought to retry the defendants for second degree murder, this time under the intentional murder alternative alone. The trial courts granted the defendants' motions to dismiss the charges on double jeopardy grounds. However, the trial courts ruled

---

(3) That the defendant caused the death of Jeff Oscar Evans, aka Aisa Cameron, in the course of and in furtherance of such crime, or in immediate flight from such crime;

(4) That Jeff Oscar Evans, aka Aisa Cameron, was not a participant in the crime; and

(5) That the acts which caused the death of the decedent occurred in King County, Washington.

CP (Wright) at 96.

[4] The information alleged additional offenses not at issue in this appeal.

the State could retry Wright for first degree manslaughter and Bryant for first degree assault.

¶11 Instead, the State successfully moved for discretionary review of the trial courts' rulings at the Court of Appeals. The Court of Appeals stayed Bryant's case pending its decision in Wright's case. In *State v. Wright*, 131 Wn. App. 474, 127 P.3d 742 (2006), the Court of Appeals reversed the trial court and remanded for trial. The Court of Appeals then reversed the trial court in Bryant's case and remanded for further proceedings. *State v. Garrett*, noted at 132 Wn. App. 1056 (2006). This court consolidated Bryant's petition for review with Wright's and granted review. *State v. Wright*, 159 Wn.2d 1014 (2007).

## ANALYSIS

■■ ¶12 The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Article I, section 9 of the Washington Constitution similarly provides, "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense." These provisions are " 'identical in thought, substance, and purpose.' " *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000)). The double jeopardy clause protects individuals from three distinct governmental abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)).

■■ ¶13 That a person may not be retried for the same offense following an acquittal is "the most fundamental rule

in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977). An acquittal is an absolute bar to retrial, regardless of how erroneous. *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978) (citing *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962)). An acquittal may be either express or implied by conviction of a lesser included offense. *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 308-09, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984). A reversal for insufficient evidence is deemed equivalent to an acquittal, for double jeopardy purposes, because it means "no rational factfinder could have voted to convict" on the evidence presented. *Tibbs v. Florida*, 457 U.S. 31, 40-41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982) (characterizing the exception as "narrow").

¶14 However, the double jeopardy clause " 'imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside' " on any ground other than insufficient evidence because the defendant's appeal continues the initial jeopardy. *State v. Corrado*, 81 Wn. App. 640, 647-48, 915 P.2d 1121 (1996) (internal quotation marks omitted) (quoting *Tibbs*, 457 U.S. at 40). The defendant may be retried for the same offense, on the original indictment or under a new indictment. *Burks v. United States*, 437 U.S. 1, 13, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). Allowing retrial upon reversal of a conviction not only serves society's interest in ensuring the guilty are punished, it also protects a defendant's right to a fair trial. *United States v. Tateo*, 377 U.S. 463, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964) (noting appellate courts would be more reluctant to find reversible errors if defendants were thereby released from criminal liability for their offenses).

¶15 The double jeopardy clause also embraces a defendant's " 'valued right' " to have the charges resolved by a particular tribunal. *Arizona*, 434 U.S. at 503 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed.

2d 974 (1949)). When the jury is discharged before rendering an express verdict, and without the defendant's consent, retrial is constitutionally impermissible unless the trial terminated under circumstances amounting to "manifest necessity." *See Gori v. United States*, 367 U.S. 364, 368-69, 81 S. Ct. 1523, 6 L. Ed 2d 901 (1961).

¶16 In this case, the defendants claim they may not be retried for second degree intentional murder because the first trial ended in the functional equivalent of an acquittal. They advance three theories: (1) the reversal of their convictions resulted from insufficient evidence, (2) their juries impliedly acquitted them of intentional murder by convicting them of felony murder, and (3) jeopardy terminated when the trial ended without an express verdict on the intentional murder alternative.

¶17 The defendants first assert they cannot be retried for second degree murder because their convictions were reversed for insufficient evidence. They reason the State failed to prove an essential element of the charged offense, i.e. an appropriate predicate felony. Following *Andress*, second degree felony murder predicated on assault is a "nonexistent crime."[5] *Hinton*, 152 Wn.2d at 857. As the Court of Appeals observed, "[t]he problem of conviction for a

---

[5] This court has implicitly recognized an *Andress*-based reversal of a second degree felony murder conviction results from trial error, not insufficient evidence. *State v. Daniels*, 160 Wn.2d 256, 265, 156 P.3d 905 (2007) ("[T]he State may retry Daniels for the same charge when a conviction is reversed for any reason other than insufficient evidence."), *adhered to on recons.*, 165 Wn.2d 627, 200 P.3d 711 (2009); *Ervin*, 158 Wn.2d 746 (Holding State may retry the defendant for first degree murder following vacation of his second degree felony murder conviction. However, we were not confronted with the double jeopardy challenge presented here.); *see Burks*, 437 U.S. at 15 (Noting that reversal for trial error "implies nothing with respect to the guilt or innocence of the defendant," the Supreme Court went on to define reversal based on trial error as "a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct."); *State v. Anderson*, 96 Wn.2d 739, 742, 638 P.2d 1205 (1982) (double jeopardy protection is not "offended when the first trial is on a defective information"); *State v. George*, 84 Wash. 113, 120, 146 P. 378 (1915) ("No man should be permitted to plead an abatement or bar because no crime is charged, and then in turn plead a former acquittal upon the theory of jeopardy and trial, for by his own plea he has made that which was voidable only void in fact and of a quality of which the law will take no account."); *State v. Burns*, 54 Wash. 113,

nonexistent crime is not a failure of proof." *Wright*, 131 Wn. App. at 480 (citing *Montana v. Hall*, 481 U.S. 400, 107 S. Ct. 1825, 95 L. Ed. 2d 354 (1987)).

¶18 In *Hall*, the State charged the defendant with sexual assault but substituted the charge of incest at the defendant's request. The Montana Supreme Court reversed the defendant's subsequent conviction because sexual assault of a stepchild did not constitute incest under the statute in effect at the time of the crime. On remand, the State retried Hall on the original sexual assault charge. The United States Supreme Court rejected the defendant's double jeopardy defense, stating:

> [R]espondent's conduct apparently was criminal at the time he engaged in it. If that is so, the State simply relied on the wrong statute in its second information. It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument.

*Hall*, 481 U.S. at 404.

¶19 As in *Hall*, the defendants' convictions were reversed because the State proceeded under the wrong statute.[6] *See State v. Gamble*, 137 Wn. App. 892, 901, 155 P.3d

---

116-17, 102 P. 886 (1909) (" 'In England an acquittal on an indictment so defective that . . . it would not have supported a conviction or sentence, has generally been considered as insufficient to support a plea of former acquittal.' . . . The common law rule prevails in this state except as modified by statute, and . . . an acquittal upon a defective information is no bar to another prosecution unless the judgment of acquittal is based upon a *verdict* after trial." (emphasis added) (quoting 12 CYCLOPEDIA OF LAW AND PROCEDURE 264 (1904))); THOMAS M. COOLEY, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS 468-70 (7th ed. 1903) ("[I]f the indictment was so far defective that no valid judgment could be rendered upon it . . . the proceedings had will constitute no protection."); *see also People v. Daniels*, 187 Ill. 2d 301, 306, 311-12, 718 N.E.2d 149, 240 Ill. Dec. 668 (1999) (failure of the State to submit instructions on felony murder "remov[ed] those counts from determination by the jury" and could not serve as an acquittal because the jury made no finding of defendant's guilt or innocence).

[6] The dissent finds *Hall* distinguishable because the State "did not proceed entirely under the wrong statute," but also charged intentional murder, a valid statutory alternative. Dissent at 810 n.20. This makes no difference. The invalid charge of felony murder based on assault would have rendered the jury's verdict fatally defective, regardless of whether the jury had been instructed on intentional murder. *See State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994) (retrial necessary when jury may have relied on legally insufficient alternative means); *Daniels*, 160 Wn.2d at 265 (remanding for retrial on second degree felony

962 (2007) (retrial permissible where defendant's second degree felony murder conviction was vacated due to the invalidity of the charge, following *Andress*), *review granted*, 164 Wn.2d 1020 (2008).

¶20 In *Parker v. Lockhart*, 797 F. Supp. 718 (E.D. Ark. 1992), *rev'd on other grounds*, 64 F.3d 1178 (8th Cir. 1995), a federal district court applied *Hall* to a set of facts remarkably similar to those presented here. In that case, the Arkansas Supreme Court construed Arkansas' felony murder statute as not applying to burglary, the predicate offense underlying the defendant's conviction. The defendant was later tried and convicted of intentional murder. Rejecting the defendant's double jeopardy argument, the court stated:

> *Hall*, therefore, at least means this: If the state convicts a defendant under the wrong statute (that is, a statute that does not encompass the defendant's otherwise criminal conduct), and that conviction is overturned on appeal, the Double Jeopardy Clause does not forbid retrial under the correct statute (that is, the statute that makes such conduct criminal), so long as there is sufficient evidence to convict under that statute.

*Id.* at 725.

¶21 That is exactly what occurred here. In *Andress*, this court held assault cannot serve as the predicate felony for second degree felony murder under the statute as amended in 1975. The decision was based on this court's construction of the language "in furtherance of" and had nothing to do with evidentiary sufficiency. In *Hinton*, this court characterized conviction of second degree felony murder predicated on assault as a "nonexistent crime" because "[n]o statute established a crime of second degree felony murder based upon assault at the time the petitioners committed the acts for which they were convicted. A conviction under former RCW 9A.32.050 resting on assault as the underlying felony is *not a conviction of a crime at all*." *Hinton*, 152

murder predicated on criminal mistreatment following reversal of felony murder predicated on assault where general verdict did not exclude the possibility the jury relied on the invalid alternative).

Wn.2d at 857 (emphasis added). Thus, reversal of a second degree felony murder conviction predicated on assault falls squarely within the rule announced in *Hall*.

¶22 Because the defendants' convictions were reversed due to the invalidity of the charge, not insufficient evidence, they may be retried for the same offense.

¶23 Next, relying principally on *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), the defendants contend jeopardy terminated on the intentional murder charge when the first trial ended without an express verdict on that alternative, and without their consent.

¶24 In *Green*, the United States Supreme Court decided that silence on a charge of murder in the first degree and conviction on the lesser included offense of murder in the second degree implied an acquittal of the greater offense. *Id.* at 189-90. In explaining its decision, the Court stated:

> Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder, it chose the latter. . . . [T]he result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so.

*Id.* at 190-91.

¶25 *Green* is based on two rationales: first, the Court presumed that by convicting the defendant of the lesser offense, the jury actually acquitted him of the greater offense; second, and more broadly, the Court reasoned that jeopardy terminated on the greater charge when the first jury " 'was given a full opportunity to return a verdict' " on that charge but instead reached a verdict on a lesser charge. *Price v. Georgia*, 398 U.S. 323, 328-29, 90 S. Ct.

1757, 26 L. Ed. 2d 300 (1970) (jury impliedly acquitted defendant of murder by convicting of lesser included manslaughter offense (quoting *Green*, 355 U.S. at 191)).

¶26 The defendants argue that both rationales apply to their situation. We disagree.

¶27 By its terms, the first rationale of *Green* does not apply. In these cases there was only one charge—second degree murder. Thus, the juries did not "acquit" the defendants of a greater charge by convicting them of a lesser charge because there was no "greater charge." Further, the juries here were not instructed on the intentional murder theory of second degree murder. As the Court of Appeals stated, "It was critical to the rationale in *Green* that the first jury 'was given a full opportunity to return a verdict' on the charge of first degree murder." *Wright*, 131 Wn. App. at 481 (quoting *Green*, 355 U.S. at 191).

¶28 An "acquittal" is a " 'resolution . . . , correct or not, of some or all of the factual elements of the offense charged.' " *United States v. Scott*, 437 U.S. 82, 97, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978) (quoting *Martin Linen*, 430 U.S. at 571); *Burks*, 437 U.S. at 15-16. Because the juries in these cases were not instructed on the alternative means of committing second degree murder, their "silence" on the charged alternative cannot signify a factual resolution favorable to the defendants. Thus, retrial does not threaten to undermine "the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch." *United States v. Powell*, 469 U.S. 57, 65-66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) (a principal purpose of absolute ban on retrial following acquittal is to protect the jury's power to acquit against the evidence).

¶29 The defendants also rely on *Green*'s rationale that jeopardy terminated when the jury was discharged without reaching an express verdict on the first degree murder charge and without his consent.[7]

---

[7] According to the dissent, we "artificially limit the import of *Green*[ ]" by failing to apply this alternative rationale more broadly. Dissent at 813 n.26. Analyzing

¶30 However, in explaining this alternative rationale, the *Green* Court stated, "It is immaterial whether second degree murder is a lesser offense included in a charge of felony murder or not. *The vital thing is that it is a distinct and different offense." Green*, 355 U.S. at 194 n.14 (emphasis added). Unlike in *Green*, this case does not involve a separate offense; it involves alternative means of committing a single offense. *See State v. Berlin*, 133 Wn.2d 541, 554, 947 P.2d 700 (1997) (intentional murder and felony murder are alternative means of committing second degree murder). Neither the United States Supreme Court nor this court has ever concluded a jury's silence bars retrial on an alternative means of committing a single offense, and we decline to do so here. *Cf. Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898) (retrial

this case as though it involved separate offenses rather than alternative means of committing a single offense, the dissent would hold jeopardy terminated when " 'the jury was dismissed without returning any express verdict on that charge and without [their] consent.' " *Id.* (emphasis omitted) (quoting *Green*, 355 U.S. at 190-91). The United States Supreme Court consistently has declined to extend *Green* beyond its facts. *See Ohio v. Johnson*, 467 U.S. 493, 501, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984) (*Green* applies only when a jury convicts defendant of lesser offense when given the opportunity to convict of a greater; declining to imply acquittal where trial court accepted defendant's guilty plea to a lesser included offense over the State's objection); *United States v. DiFrancesco*, 449 U.S. 117, 135 n.14, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980) (declining to apply *Green*'s "implied acquittal" doctrine to sentencing; government may appeal sentence); *Price*, 398 U.S. at 328-29 (paraphrasing *Green*'s holding as "petitioner's jeopardy on the greater charge had ended when the first jury 'was given *a full opportunity to return a verdict*' on that charge and instead reached a *verdict on the lesser charge*" (emphasis added) (quoting *Green*, 355 U.S. at 191)); *Pearce*, 395 U.S. 711 (declining to apply *Green*'s implied acquittal doctrine where a sentencing court imposes a lesser sentence; imposition of greater sentence after retrial permissible); *United States v. Ewell*, 383 U.S. 116, 125 n.9, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966) (distinguishing *Green* as involving *both* an implied acquittal on a separate offense *and* a lack of an express verdict on the charge for which he was tried; allowing retrial under statutory alternatives following reversal); *Tateo*, 377 U.S. at 465 n.1 (stating *Green* "holds only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged"; retrial permissible where trial ended on the fourth day of trial because the government coerced defendant to plead guilty); *see also Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003) (distinguishing *Green*; refusing to imply acquittal where jury convicted of lesser offense and expressly hung on greater); *Schiro v. Farley*, 510 U.S. 222, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (distinguishing *Green*; conviction of felony murder did not imply acquittal of intentional murder for purposes of constitutional collateral estoppel at capital-sentencing hearing).

impermissible following inexplicable jury silence on *separate counts* of a multicount indictment); *State v. Davis*, 190 Wash. 164, 67 P.2d 894 (1937) (same).

¶31 Nearly every court addressing the issue has found *Green* inapplicable when a jury expressly finds the defendant guilty of an alternative means of committing a single offense while remaining silent as to another. *See Commonwealth v. Carlino*, 449 Mass. 71, 865 N.E.2d 767 (2007) (jury silence on felony murder did not bar retrial on that charge where jury returned an express verdict on alternative statutory charge of first degree murder); *State v. Wade*, 284 Kan. 527, 543, 161 P.3d 704 (2007) (conviction of felony murder did not bar retrial where jury left verdict form blank on the statutory alternative of premeditated first degree murder); *Beebe v. Nelson*, 37 F. Supp. 2d 1304 (D. Kan. 1999) (jury silence on felony murder charge did not bar retrial where jury convicted on alternative charge of aiding and abetting murder where jury was permitted to return a guilty verdict on only one alternative); *State v. Pexa*, 574 N.W.2d 344, 347 (Iowa 1998) ("A failure to consider an alternative definition of the offense charged does not constitute an acquittal of that offense for double jeopardy purposes."; remanding for further proceedings where conviction was entered on the incorrect alternative theory of liability charged by the State); *United States v. Ham*, 58 F.3d 78 (4th Cir. 1995) (jury silence on some, but not all, predicate acts for a RICO (Racketeer Influenced and Corrupt Organizations Act) offense did not bar retrial on those predicates); *Schiro v. State*, 533 N.E.2d 1201 (Ind. 1989) (*Schiro* I) (refusing to imply acquittal of intentional murder from jury's silence where jury convicted of felony murder), *aff'd sub nom. Schiro v. Farley*, 510 U.S. 222, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (*Schiro* II); *United States ex rel. Jackson v. Follette*, 462 F.2d 1041 (2d Cir. 1972) (jury silence on felony murder alternative did not bar retrial when jury convicted of premeditated murder); *People v. Jackson*, 20 N.Y.2d 440, 231 N.E.2d 722, 285 N.Y.S.2d 8 (1967) (jury silence on felony murder did not imply acquit-

tal on that charge where jury convicted on alternative theory of premeditated murder); *United States v. Garcia*, 938 F.2d 12 (2d Cir. 1991) (jury silence did not bar retrial where insufficient evidence supported an alternative theory and the jury verdict was ambiguous as to which theory the jury accepted).[8]

¶32 No Supreme Court case is directly on point. However, several cases suggest that when an individual is prosecuted for committing a single offense that can be committed in multiple ways, jeopardy attaches to the offense as a whole rather than to the particular form in which it is tried, so that if an individual succeeds in getting a conviction set aside, the defendant's "continuing jeopardy" applies to any alternative way of committing the same offense. Thus, an individual is not placed "twice in jeopardy" by retrial on any valid alternative, whether or not the State proceeded under it at the first trial.

¶33 In *Cichos v. Indiana*, 385 U.S. 76, 87 S. Ct. 271, 17 L. Ed. 2d 175 (1966), the State charged the defendant with one count of reckless homicide and one count of involuntary manslaughter. The jury convicted Cichos of homicide while remaining silent on manslaughter. After the conviction was set aside on appeal, the State retried the defendant on both charges, with the same result. Relying on *Green*, the defendant argued the jury impliedly acquitted him of invol-

---

[8] The dissent relies on *Terry v. Potter*, 111 F.3d 454, 458 (6th Cir. 1997) in support of a contrary proposition. Dissent at 814-15. That case is readily distinguishable. The defendant was tried for intentional murder and wanton murder, alternative forms of committing capital murder. However, the jury was instructed as though they were separate offenses of different degrees. *Terry*, 111 F.3d at 455. It found the defendant guilty of wanton murder after being given a choice between intentional murder, wanton murder, and first degree manslaughter. The court held that jeopardy terminated on the intentional murder charge, under both of *Green*'s rationales. *Terry* is distinguishable because Terry's jury had a " 'full opportunity' " to convict him of intentional murder after being instructed it must choose between intentional murder and wanton murder. *Id.* at 457 (quoting *Green*, 355 U.S. at 191). The juries in this case were not instructed on intentional murder, much less required to choose between them. More importantly, under the *Terry* court's interpretation of state law, intentional murder and wanton murder are separate offenses, such that conviction of one would not bar prosecution for the other. The contrary is true of intentional murder and felony murder under Washington law.

untary manslaughter by its silence. The Supreme Court accepted review to determine whether the Fifth Amendment's prohibition against double jeopardy applies to the states. But the Court dismissed the case as improvidently granted upon learning reckless homicide and involuntary manslaughter constitute a single offense,[9] under state law, such that an acquittal or conviction of one crime bars prosecution for the other: "[W]e cannot accept petitioner's assertions that the first jury acquitted him of the charge of involuntary manslaughter and that the second trial therefore placed him twice in jeopardy." *Id.* at 80.[10]

¶34 More recently, the Supreme Court affirmed a state court ruling that a jury's silence on an alternative murder charge did not operate as an implied acquittal for purposes of constitutional collateral estoppel. *Schiro* II, 510 U.S. 222. The Indiana Supreme Court held, " '[felony murder] is not an included offense of [murder] and where the jury, as in the instant case, finds the defendant guilty of one of the types of murder and remains silent on the other, it does not operate as an acquittal of the elements of the type of murder the jury chose not to consider'." *Id.* at 227 (alterations in original) (quoting *Schiro* I, 533 N.E.2d at 1208). The Supreme Court affirmed this holding on the assumption the state supreme court correctly characterized felony murder as an alternative, not separate, offense under state law.

¶35 A defendant charged and tried under multiple statutory alternatives experiences the same jeopardy as one charged and tried on a single theory. The defendant is in jeopardy of a single conviction and subject to a single punishment, whether the State charges a single alternative or several. *See State v. Womac*, 160 Wn.2d 643, 658, 160 P.3d 40 (2007) (although State may pursue multiple

---

[9] The elements of the charges were identical, though they carried distinct punishments, with manslaughter being the more serious charge.

[10] In a case decided three years later, the Court held the double jeopardy clause applies to the states via the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

charges, court may enter only one conviction for the same offense). When a proceeding ends in an undisturbed verdict or verdict equivalent on any alternative, the State may not prosecute the defendant on any other means of committing the same offense. *See Sanabria v. United States*, 437 U.S. 54, 69, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978) (acquittal on any alternative theory of liability bars reprosecution on "any aspect of the count"). Conversely, when jeopardy continues due to the reversal of a conviction for trial error, the defendant remains in jeopardy of conviction under any appropriate alternative theory of liability. *Tateo*, 377 U.S. at 465. Thus, the defendants' continuing jeopardy on second degree felony murder constitutes jeopardy on the offense of second degree murder and encompasses the offense of second degree intentional murder.

¶36 We reject the defendants' contention that jeopardy terminated when the jury was discharged without an express verdict on intentional murder and without their consent. The constitutional right to an "express verdict" entitles a defendant to a unanimous verdict on the offense charged, not an express verdict on the particular alternative on which the jury relied. *State v. Linehan*, 147 Wn.2d 638, 645, 56 P.3d 542 (2002) (citing *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976) (affirming conviction of second degree rape charged in the alternative, where jury returned a general verdict of guilt)); *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988).[11] A defendant is not entitled to unanimity on an alternative charge where sufficient evidence supports each charged alternative. *Id.* The Supreme Court has affirmed the constitutionality of this result. *See Schad v. Arizona*, 501 U.S. 624, 627, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (affirming first degree murder conviction where jury in-

---

[11] Of course, if appropriate, a defendant may request a unanimity instruction. But failure to give such an instruction results in a new trial, not acquittal, unless there is insufficient evidence to support an alternative. *State v. Coleman*, 159 Wn.2d 509, 513, 150 P.3d 1126 (2007); *Kitchen*, 110 Wn.2d at 410.

structions did not require agreement on the charged alternatives of premeditated murder and felony murder).[12]

¶37 Because intentional murder and felony murder are alternative means of committing second degree murder, the "express verdict" to which the defendants were entitled was a verdict on the second degree murder charge, not each charged alternative.

¶38 Even if they had secured an express finding that the jury did not unanimously find them guilty of intentional murder, the defendants could not have avoided the burden of retrial. *See State v. Ramos*, 163 Wn.2d 654, 184 P.3d 1256 (2008). In *Ramos*, the jury returned a general verdict of guilt for second degree murder, charged in the alternative as intentional murder and felony murder predicated on assault. By special interrogatory, the jury indicated unanimous agreement on the felony murder alternative but a lack of unanimity on intentional murder. Yet this court rejected the proposition the jury impliedly acquitted the defendant of intentional murder: "So long as the jurors were unanimous as to the crime of second degree murder— which they were—their unanimity as to either alternative mean was not necessary." *Id.* at 661. Accordingly, this court concluded the jury's response to the special interrogatory had "no consequence ... for double jeopardy purposes."[13] *Id.*

---

[12] Under the federal constitution, a general verdict of guilty on a single count charging the commission of an offense by alternative means is valid when any single means is sustainable. *See Griffin v. United States*, 502 U.S. 46, 50, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). The Washington Constitution provides greater protection of the jury trial right, requiring reversal if it is impossible *to rule out the possibility* the jury relied on a charge unsupported by sufficient evidence. *Ortega-Martinez*, 124 Wn.2d at 708; *State v. Green*, 94 Wn.2d 216, 233, 616 P.2d 628 (1980) (remanding for retrial where jury may have relied on legally insufficient alternative predicate felony in committing felony murder). Significantly, however, a defendant in such a position is entitled only to a new trial, not an outright acquittal, unless the record shows the evidence was insufficient to convict on any charged alternative. *See State v. Joy*, 121 Wn.2d 333, 346, 851 P.2d 654 (1993). In this case, the jury obviously relied on a legally invalid alternative. Thus, the conviction must be reversed. But the defendants are not entitled to an outright acquittal because the record contains sufficient evidence to convict on the intentional murder alternative.

[13] For the contrary proposition, the defendants rely primarily on *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988), a Sixth Circuit decision of questionable

¶39 What the defendants complain of, in essence, is the omission of a jury instruction that only could have reduced their chances of obtaining a favorable verdict at the first trial. The juries were allowed to convict the defendants upon finding they caused the victims' deaths in the course of and in furtherance of committing second degree assault. Had the State proposed an intentional murder instruction, the juries would have been allowed to convict them for causing the deaths *either* intentionally *or* in the course of and in furtherance of committing second degree assault, without necessarily agreeing on which alternative had been proved. Obviously, the respective juries unanimously agreed the defendants caused the deaths of their victims in the course of and in furtherance of committing second degree assault. Had they been instructed on the intentional murder alternative, the verdict would have been no different even if no juror found beyond a reasonable doubt the murder was committed intentionally. The omission of the intentional murder alternative in no way prejudiced the defendants' ability to secure an acquittal.

¶40 In view of the circumstances presented here, we conclude retrying the defendants for second degree murder

precedential value. In *Saylor*, the defendant was tried on one count of murder, committed as a principal, an accomplice, and by conspiracy. The jury convicted the defendant of murder by conspiracy after being instructed only on that theory. The appellate court reversed the conviction because the evidence did not support a conspiracy charge but permitted retrial on the alternative theories of liability, characterizing the error as instructional error, not insufficient evidence. The Sixth Circuit reversed, holding that retrial violated the double jeopardy clause. The court viewed each basis of liability as a separate offense, with "no necessary logical nexus" among them. *Id.* at 1408. Thus, the court reasoned that if the jury had acquitted *Saylor* of murder as a conspirator, it could have prosecuted him for murder as a principal or accomplice. *Id.* Finding such a situation "fraught with the possibility of manipulation," the *Saylor* court held the State's failure to submit jury instructions on the charged alternatives precluded it from retrying the defendant. *Id.*

*Saylor* is distinguishable on the facts, as it involves separate offenses, not alternative means of committing a single offense, and the conviction failed for insufficient evidence, not trial error. Moreover, the defendant in that case proposed the appropriate jury instructions and objected when the court refused to give them. In her thorough and well-reasoned opinion, Judge Becker found *Saylor* not only factually distinguishable but legally unsound. *Wright*, 131 Wn. App. at 482-85. We agree with her analysis and adopt it as our own, and decline to follow the dubious reasoning of the *Saylor* court.

on the alternative theory of intentional murder does not offend double jeopardy principles.

¶41 The reason for barring retrial when a trial ends without a verdict is to protect the defendant's " 'valued right' " to have the trial completed by a particular tribunal, and to prevent the State from manipulating the trial process by terminating the proceedings when it appears its case is weak or the jury is unlikely to convict. *Crist v. Bretz*, 437 U.S. 28, 35-36, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978) (quoting *Wade*, 336 U.S. at 689); *Green*, 355 U.S. at 188. In contrast to the bright line rule barring retrial following an acquittal or unreversed conviction, the rules governing preverdict terminations are flexible and case specific.[14] *Serfass v. United States*, 420 U.S. 377, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975); *Downum v. United States*, 372 U.S. 734, 736, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963). Peter Westen, *The Three Faces of Double Jeopardy: Reflecting on Government Appeals of Criminal Sentences*, 78 MICH. L. REV. 1001, 1013 (1980).

¶42 When the circumstances suggest the prosecution's action was motivated by a concern it could not prove its case, retrial is impermissible. For example, in *Downum*, 372 U.S. at 736, the prosecutor requested a midtrial dismissal due to the unavailability of a key prosecution witness. In holding the double jeopardy clause barred retrial, the Court reasoned that allowing the State to retry a defendant under such circumstances was susceptible to

---

[14] The dissent insists the rules applicable to mistrials are inapposite. The dissent incorrectly states that *Green*'s second rationale (jeopardy terminates when a trial ends without an express verdict, and without defendant's consent) represents a "separate jurisprudence" from the mistrial branch of double jeopardy. Dissent at 813 n.24. The rule that jeopardy "attaches" when the jury is impaneled (and thus may "terminate" even when there is no final verdict) applies to all preverdict termination scenarios, whether a mistrial, midtrial dismissal, or other. *See Lee v. United States*, 432 U.S. 23, 97 S. Ct. 2141, 53 L. Ed. 2d 80 (1977) (dismissals are governed by the same principles applicable to mistrials); *People v. Tracey*, 221 Mich. App. 321, 561 N.W.2d 133 (1997) (analogizing to mistrial context to analyze whether discontinuation of trial terminates jeopardy); *State v. Middleton*, 299 N.J. Super. 22, 690 A.2d 623 (1997) (analogizing to mistrial context to analyze whether defendant's request for continuance precludes double jeopardy defense). *Green*'s second rationale is not a stand-alone rule that applies without regard to other applicable rules governing mistrials, which the dissent ignores.

abuse by prosecutors unprepared to try their case. "[L]ack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee." *United States v. Jorn*, 400 U.S. 470, 486, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971) (citing *Downum*); *see also Washington*, 434 U.S. at 508 n.24 (double jeopardy clause " 'forbids the prosecutor to use the first proceeding as a trial run of his case' " (quoting Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 287-88 (1965))).

¶43 But when there is no indication of bad faith and no likelihood of prosecutorial manipulation, double jeopardy principles are not necessarily offended. Thus, courts find *Downum* distinguishable when there clearly was no intent to abort the trial because of perceived weaknesses in the State's case. *Tateo*, 377 U.S. at 467-68 (distinguishing *Downum* as involving situation where midtrial dismissal resulted from prosecution's lack of trial preparedness); *Illinois v. Somerville*, 410 U.S. 458, 469, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973) (distinguishing *Downum* as a case where the midtrial dismissal "operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case"); *see* 6 Wayne R. LaFave et al., Criminal Procedure § 25.2(d) at 619 n.34 (3d ed. 2007) (collecting cases).

¶44 For example, in *Somerville*, the Court allowed retrial following a midtrial dismissal requested by the prosecutor due to a defective charging instrument. Such an error is not susceptible to the kind of manipulation of the trial process at issue in *Downum*, as a prosecutor would be unlikely deliberately to plant the seed of a certain reversal by filing a defective indictment.

¶45 In this case, there has been no allegation of prosecutorial misconduct or overreaching. Rather, the prosecution simply relied on an apparently valid alternative deemed invalid by a subsequent judicial decision that clarified the felony murder statute. This case presents a scenario much closer to the kind of procedural error that

occurred in *Somerville* than to the inability of the State to go forward with its case, as occurred in *Downum.*

¶46 There is also no basis for inferring the State elected not to instruct on intentional murder because it had been unable to marshal persuasive evidence to prove the charge. On the contrary, the evidence in support of the intentional murder was very strong. The evidence showed that Wright pulled the victim to him, said, "Don't you know I shot you?" (1 VRP at 209), placed the muzzle of the gun against the victim's heart, and pulled the trigger. In Bryant's case, the evidence showed that Bryant shot at the victim and that the victim died from a bullet fired from a gun found in Bryant's possession shortly thereafter.

¶47 The dissent's principal concern appears to be that a prosecutor could manipulate the trial process by charging a defendant on multiple alternative theories, present evidence on each, then go to the jury on select theories while holding others in reserve.[15] Dissent at 817. The dissent's

---

[15] The dissent poses the scenario of a prosecutor charging a defendant with violating a statute by six alternative means, going to the jury on only one alternative, and then subjecting the defendant to a succession of five retrials in the event the subsequent convictions are reversed for trial error. Citing no authority, the dissent states such a " 'successive prosecution' " is "squarely within the prohibition of the double jeopardy clause if anything is." Dissent at 817. Initially, whether retrial is permissible depends on the facts of each case, not speculative, unlikely scenarios of abusive prosecution. *Downum,* 372 U.S. at 736; *Somerville,* 410 U.S. at 469. Moreover, other courts have not found the issue so clear cut. *See, e.g., United States v. Wood,* 958 F.2d 963 (10th Cir. 1992) (special verdict indicating jury relied on one of six statements in convicting defendant of making false statements to the Federal Bureau of Investigation did not prevent retrial on all six alternative acts alleged in the indictment). However, to suggest the double jeopardy clause would not necessarily bar the successive prosecutions hypothesized by the dissent is not to say no other constitutional provision would.

The double jeopardy clause is not the exclusive source of constitutional protection against successive prosecutions. Both before and after the incorporation of the double jeopardy clause into the Fourteenth Amendment, the Supreme Court addressed challenges to multiple prosecutions and punishments by the states under the due process and equal protection clauses. *See Schad,* 501 U.S. 624 (due process clause, not double jeopardy clause, may prevent State from prosecuting defendant for an unduly broad alternative means crime); *Pearce,* 395 U.S. at 721 (due process, not double jeopardy, prevents vindictive imposition of increased sentence upon reconviction after appeal); *Brock v. North Carolina,* 344 U.S. 424, 73 S. Ct. 349, 97 L. Ed. 456 (1953) (deciding whether a successive prosecution for murder violated the state defendant's federal due process right where first trial ended in mistrial due to unavailability of prosecution witness).

concern is simply unfounded. If the first trial results in either an acquittal or a conviction that is not appealed, the State cannot prosecute the defendant for the same offense on an alternate theory. *Cf. Saylor*, 845 F.2d at 1408.[16] Considering the State's case would end once a trial results in an acquittal or unreversed conviction, the prosecutor has little incentive to hold an alternative theory in reserve for a "rainy day" rather than present its best possible case at the earliest opportunity.

¶48 Allowing retrial when the State obtains a conviction on an apparently valid legal theory but inexplicably fails to instruct on another charged alternative does not present the State with an unfair opportunity to have a test run at trying its case. *See United States v. Davis*, 714 F. Supp. 853 (S.D. Ohio 1988) (allowing retrial on alternative theory of liability following reversal of a conviction predicated on a theory of liability held invalid by a subsequent Supreme Court decision), *aff'd*, 873 F.2d 900 (6th Cir. 1989). Although the State intentionally chose to secure a conviction based only on the felony murder alternative and could have submitted the intentional murder alternative for the jury's consideration, it was relying on case law that supported a second degree felony murder conviction predicated on second degree assault.[17]

---

Successive prosecutions violate due process if they occur under situations that impose " 'acute and shocking' " hardship on a defendant. *Brock*, 344 U.S. at 427 (quoting *Palko v. Connecticut*, 302 U.S. 319, 328, 58 S. Ct. 149, 82 L. Ed. 288 (1937)). For example, retrial following a succession of hung juries has been found impermissible on due process grounds. *See State v. Witt*, 572 S.W.2d 913 (Tenn. 1978) (affirming trial court's dismissal of indictment following three hung juries). However, the defendant must establish that retrial would impose undue hardship in his or her particular case. The defendants here have made no attempt to establish undue hardship.

[16] For this reason, the same court that decided *Saylor* later found it distinguishable where the State's election to withhold an alternate theory from the jury's consideration would preclude it from reprosecuting on that theory if the first trial results in an undisturbed verdict. *See United States v. Davis*, 873 F.2d 900, 905 (6th Cir. 1989).

[17] The dissent characterizes the State's conduct as "tactical[ ]," as though that term has some double jeopardy significance. Dissent at 810. The important consideration is whether the State's tactics amount to an improper attempt to manipulate the trial process in order to gain some unfair advantage over the

¶49 Regardless of whether all jurors, or none, found the defendants guilty of the intentional murder alternative, they would have stood convicted of second degree murder. Under these circumstances, it is difficult to see how the failure to instruct on intentional murder prejudiced the defendants' right to have the charge resolved at the first trial.

¶50 In the dissent's view, the defendants' interest in avoiding the "risk, expense, and anxiety" of retrial outweighs society's interests in holding them accountable for their criminal behavior. Dissent at 818. The State could have retried the defendants even if the jury had indicated, by special interrogatory, a lack of unanimity on the intentional murder alternative. *See Ramos*, 163 Wn.2d 654 (allowing retrial for second degree intentional murder where jury returned general verdict of guilt as to second degree murder and indicated by special interrogatory a lack of unanimity on intentional murder). It is no more unfair to force the defendants to "run the gantlet" on intentional murder a second time when the jury was not instructed on that alternative but returned a general verdict of guilt than when the jury expressly indicates a lack of unanimity on a charged alternative.

¶51 The State's failure to propose a jury instruction on intentional murder neither prejudiced the defendants' ability to obtain a favorable verdict at the first trial nor subjected the defendants to an undue burden of retrial. The burden of undergoing retrial is not a legally cognizable harm for double jeopardy purposes when the defendant has sought a second trial to remedy a legal defect in the first one. *See Scott*, 437 U.S. at 91. Allowing the defendants to parlay the reversal of their second degree murder conviction into an outright acquittal would unjustly elevate the defendants' interest in avoiding successive prosecution over the public's interest in punishing those who commit crimes.

defendant. *See Oregon v. Kennedy*, 456 U.S. 667, 677, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (prosecutorial misconduct serious enough to warrant a mistrial does not bar retrial absent evidence of bad faith). The dissent identifies no unfair advantage gained by the State in forgoing an intentional murder instruction.

810

## CONCLUSION

¶52 We hold that no final conviction or prior acquittal prevents the State from continuing its prosecution of the defendants for second degree murder on the alternative means of intentional murder. The defendants' second degree felony murder convictions were reversed due to trial error, not insufficient evidence. The defendants were not impliedly acquitted of second degree intentional murder at their first trial because the jury had no opportunity to consider their guilt or innocence on that offense. The State's failure to instruct the jury on the intentional murder alternative is of no consequence for double jeopardy purposes. Thus, we affirm the Court of Appeals.

C. JOHNSON, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., and BRIDGE, J. PRO TEM., concur.

¶53 SANDERS, J. (dissenting) — "Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization."[18]

¶54 The State charged Oliver Wright and Dennis Bryant with second degree murder committed either as an intentional murder or a felony murder. Each man was tried, "r[a]n the gantlet"[19] for second degree murder, and fully defended against both alternative means of committing the crime.[20] At the close of evidence, the State tactically de-

---

[18] *Bartkus v. Illinois*, 359 U.S. 121, 151, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959) (Black, J., dissenting).

[19] *Green v. United States*, 355 U.S. 184, 190, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957).

[20] Unlike *Montana v. Hall*, 481 U.S. 400, 107 S. Ct. 1825, 95 L. Ed. 2d 354 (1987), and *Parker v. Lockhart*, 797 F. Supp. 718 (E.D. Ark. 1992) referenced by the majority at 794-95, the State here did not proceed entirely under the wrong statute but specifically charged and tried defendants not only for felony second degree murder by assault but also for second degree murder by intention. The intentional murder alternative was charged and tried under the correct statutes.

cided to instruct the jury only on the felony murder alternative. Thus, the State fully realized its "one, and only one, full and fair opportunity to convict the defendant[s]" for second degree murder.[21] That the State chose to instruct the jury on only one of the two charged alternate means is of no import since defendants were placed in jeopardy for each alternative means and jeopardy terminated on the intentional means when the jury was dismissed without a verdict on that charge.

¶55 However, the majority now allows the State to retry the defendants a second time for second degree murder, this time, as last, on the intentional means alternative. But defendants already ran the gauntlet on that exact alternative. Retrial would subvert the double jeopardy clause in the clearest way. Double jeopardy bars a second prosecution for an alternative means previously charged and tried, yet not submitted to the jury at the election of the prosecution, where the jury was dismissed without the defendants' consent and no mistrial was declared. To hold otherwise allows the State to keep these alternative means " 'in a safe for a rainy day' "[22] to repeatedly retry a defendant until a conviction is obtained that sticks on appeal.

¶56 It is true, as the majority states at 792, that retrial is *usually* not barred when a verdict is reversed for reasons other than insufficiency of evidence. And this verdict was reversed because felony murder predicated on assault is simply not a crime. But there can be no retrial on an alternative that was previously charged and tried, absent a mistrial. *See State v. Franco*, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982); *see also Terry v. Potter*, 111 F.3d 454 (6th Cir. 1997). Here only one means was submitted to the jury, so the question becomes: can the State retry the defendants on a previously uninstructed means? I think not.

¶57 Washington's Declaration of Rights demands, "[n]o person shall . . . be twice put in jeopardy for the same

---

[21] *Richardson v. United States*, 468 U.S. 317, 330, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984).

[22] *State v. Womac*, 160 Wn.2d 643, 651, 160 P.3d 40 (2007).

offense." Const. art. I, § 9. The Fifth Amendment to the United States Constitution requires, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." Washington's double jeopardy clause "is given the same interpretation the Supreme Court gives to the Fifth Amendment." *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). By their texts, these double jeopardy clauses prohibit retrying a defendant for the same crime. Here the crime at issue is second degree murder by means of intent. However, the defendants were already tried for that, notwithstanding that they were also tried for felony second degree murder by means of felony assault. This blanket ban on retrial is subject to only a few well-defined exceptions, including where the trial court declares a mistrial for "manifest necessity."[23]

¶58 Retrial is barred where jeopardy has attached and terminated. *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996). Jeopardy attaches to charges pending when the jury is "empaneled and sworn." *Crist v. Bretz*, 437 U.S. 28, 35, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978). As such, jeopardy attached to the defendants' second degree murder charges by these alternative means when the jury was impaneled. The only remaining question here is whether jeopardy terminated for second degree murder by intentional means because that is the charge for which the State seeks a retrial.

¶59 Dismissal of the jury without the consent of the defendant terminates jeopardy just as surely as an acquittal, absent that "manifest necessity" where the trial court properly declares a mistrial. *Green v. United States*, 355 U.S. 184, 191, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). Here, as the defendants correctly argue, jeopardy terminated on the alternative means of committing the crime charged, including intentional murder, when the jury was dismissed with-

---

[23] *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824).

out the defendants' consent.[24] That defendants were also charged with the alternative means of felony murder by assault is irrelevant. We have held, as the majority states, felony murder by assault was not a crime at the time the conduct occurred. Majority at 793-94 (quoting *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004)); *see also In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002).[25]

¶60 In *Green*, the United States Supreme Court held "under established principles of former jeopardy," jeopardy for an offense comes "to an end when the jury [i]s discharged" and no mistrial is declared. *Green*, 355 U.S. at 191.[26] This is true even where there is no "verdict of guilt or

[24] Moreover, contrary to the majority's claim, we do not rely on mistrial jurisprudence (as there was no mistrial here), but instead understand jeopardy terminates when no mistrial is declared, a separate jurisprudence.

[25] The majority repeatedly characterizes the scenario here, where defendants were tried for both intentional murder *and* felony murder, as equivalent to trial error. Majority at 788, 791-92. This paints the facts with too broad a brush; as aforementioned, the defendants were charged and tried also for intentional murder, a perfectly valid statutory alternative. The majority relies on *State v. Daniels*, 160 Wn.2d 256, 156 P.3d 905 (2007), *adhered to on recons.*, 165 Wn.2d 627, 200 P.3d 711 (2009), to assert retrial is not barred following the vacation of defendants' convictions under *Andress*. But I have come to see *Daniels* as wrongly decided. 165 Wn.2d at 629 (Sanders, J., dissenting). In *Daniels*, as here, the jury was dismissed without returning a verdict on the operative charge, without the defendant's consent, and without the judge declaring a mistrial. Daniels' case differed from Wright's and Bryant's because her jury was instructed on two charges, and if unable to agree on her guilt or innocence on the first charge, to consider the alternative. *See Brazzel v. Washington*, 491 F.3d 976, 984-85 (9th Cir. 2007) (considering such an "unable to agree" instruction, distinguishing from genuine deadlock, and concluding retrial on greater offense was barred by double jeopardy (relying on *Green*, 355 U.S. 184, for analysis)).

[26] The majority attempts to artificially limit the import of *Green*'s second rationale by describing it as applying only when a jury "reached a verdict on a lesser charge." Majority at 796. But the Supreme Court specifically stated the critical facts were whether any verdict was returned on the charge and whether the jury was dismissed. *Green*, 355 U.S. at 190-91 ("But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. *For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent*." (emphasis added)). Contrary to the majority's assertion, there is no need to extend *Green*; the operative facts here fit squarely within the *Green* rationale. The majority's analysis artificially limits *Green* by refusing to recognize the critical facts underpinning its second rationale, not by its failure to extend *Green* to different scenarios, including sentencing.

innocence . . . returned." *Id.* at 188. Here a verdict was not returned on the intentional means because the State did not seek or require it. Nevertheless, the defendants were charged with it, tried for it, and did not consent to jury dismissal. The State had a full and fair opportunity to obtain a conviction on any charged alternative means but demurred at the last moment. Notwithstanding this last-minute change in strategy, jeopardy attached to the alternative means.

¶61 The United States Supreme Court has consistently held jeopardy terminates on a charge where the jury is discharged without the defendant's consent prior to returning a verdict, absent a mistrial. *Downum v. United States*, 372 U.S. 734, 736, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963). And we have held the same, i.e., jeopardy terminates "when the court dismisses the jury without the defendant's consent." *State v. Ervin*, 158 Wn.2d 746, 753, 147 P.3d 567 (2006) (citing *Green*, 355 U.S. at 188). These well-reasoned holdings are dispositive of the issue presented here and should end our analysis. However, the majority goes beyond this simple, clear application of well-established principles into a fog of confusion. Under the majority's analysis, jeopardy continues on second degree murder as a whole, and not on each alternative means of committing the crime. Even assuming this is true, jeopardy does *not* continue on any alternative means which was charged and tried.

¶62 In *Terry*, the Sixth Circuit agreed jeopardy does not continue on alternative means that were charged and tried. 111 F.3d 454. There, the defendant was charged with wanton murder and intentional murder, "two possible ways to commit 'murder.' " *Id.* at 455. Terry was found guilty of wanton murder, but the jury returned no verdict on the remaining charges, including intentional murder. *Id.* The Sixth Circuit correctly analyzed each charge as a separate offense for jeopardy purposes and held jeopardy terminated for intentional murder even though "jeopardy on the wanton murder charge may have continued after the

trial and successful appeal." *Id.* at 458.[27] Likewise, jeopardy should not continue here on the intentional murder alternative simply because jeopardy would continue on the felony murder alternative.

¶63 The majority justifies the State's actions by alternately claiming the defendants benefited from the State's choosing to abandon the intentional murder alternative, and that the defendants impliedly consented to the dismissal of the jury without considering the charge.[28]

¶64 The majority opines the defendants benefited when the jury did not deliberate on the intentional murder charge, following the men's trial for intentional murder. But whether a defendant benefited or was harmed by the prior jeopardy is immaterial to double jeopardy analysis. Where an individual was placed in jeopardy for an offense, he may not be placed in jeopardy again. *See* U.S. CONST. amend. V; CONST. art. I, § 9. This is true even if the prior jeopardy could somehow be seen as beneficial. "What the defendants complain of, in essence,"[29] is not the omission of a jury instruction, as suggested by the majority. Instead they complain of the State's attempt to *retry* them for an offense for which they were previously tried.

¶65 The majority then uses mistrial jurisprudence to support its holding that double jeopardy does not bar retrial on intentional murder. Majority at 805. But as previously stated, there was no mistrial declared here, and so the well-established rules governing mistrials are simply inapplicable.

¶66 Moreover, the majority asserts retrial is permissible unless the defendant shows the prosecution was "motivated by a concern it could not prove its case." Majority at 805.

---

[27] *But see United States ex rel. Jackson v. Follette*, 462 F.2d 1041 (2d Cir. 1972) (allowing retrial on alternate means of committing a crime where the defendant defended against both means).

[28] The majority's apologia justifying the State's action can only lead one to believe it comprehends the wrongfulness of the State's action in this case.

[29] Majority at 804.

However, the double jeopardy clause protects a "defendant's valued right to have his trial completed by a *particular* tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949) (emphasis added). The majority incorrectly allows a *second* jury to retry the defendants, contravening the fundamental purpose of the double jeopardy clause.

¶67 Apparently the defendants did not express their appreciation for this right forcefully enough for the majority because the defendants did not take exception to the trial court's jury instructions. Majority at 790, 803-04 & n.13 (distinguishing *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988), in part because "the defendant in that case proposed the appropriate jury instructions and objected when the court refused to give them"). However, defendant Wright proposed a jury instruction on intentional murder that was not included in the instructions to the jury. In either event, the double jeopardy clause is there to prevent successive trials, not to tell the trial court how the jury is to be instructed. Jeopardy attached to this charge long before the jury was instructed and without regard to how the jury was instructed.

¶68 Furthermore, the defendant "hardly can be faulted for not having done the prosecutor's job." *Saylor*, 845 F.2d at 1407. And there was nothing objectionable about the instruction given. Neither the court nor the prosecutor had any legal duty to instruct the jury on the intentional alternate means after the prosecution abandoned it, apparently as a trial tactic. Why should the defendants object to the prosecution's narrowing the basis to find criminal liability? What does this have to do with double jeopardy once jeopardy has attached?

¶69 In *United States v. Jorn*, 400 U.S. 470, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971), the trial court dismissed a seated jury without objection by the defendant before the jury returned a verdict. The Supreme Court held double jeopardy barred a second trial in part because "the judge, act[ed] without the defendant's consent, [and] abort[ed] the

proceeding, [and] the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' " *Jorn*, 400 U.S. at 484 (quoting *Wade*, 336 U.S. at 689). The Supreme Court in *Jorn* upheld the defendant's double jeopardy challenge, implicitly rejecting the majority's claim that consent to dismissal is implied by the defendants' failure to object.

¶70 To illustrate this point, let us suppose a criminal statute sets forth six alternative means to violate it. Now let us suppose the State charges a defendant with violating the statute in question by every alternative means, trying the defendant for the violation with strong evidence, but only instructing the jury as to one of the alternative means. As the majority recognizes here, "the State elected not to instruct on intentional murder" despite its assertion the evidence on that charge was very strong. Majority at 807. Yet, under the majority's reasoning, the State in our hypothetical can force the defendant to stand trial for the same crime up to five additional times should the first conviction be reversed on anything but insufficient evidence. This type of "successive prosecution" is squarely within the prohibition of the double jeopardy clause if anything is.

¶71 Finally, the majority describes the dissent's principal concern as the possibility of prosecutorial misconduct. *Id.* However, the principal concern in this dissent is not with the prosecutor, but instead with the defendants, and the threat and anxiety they face due to the possibility of unconstitutional retrials. The United States Supreme Court eloquently described this concern:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green*, 355 U.S. at 187-88. The double jeopardy clause is primarily concerned with the risk, expense, and anxiety a defendant faces upon retrial for a crime for which he has already been charged and tried.

¶72 Jeopardy for any alternative means terminates when the jury is dismissed without the consent of the defendants absent a declared mistrial, whether there was a verdict or not. Here the jury was dismissed without the consent of the defendants. Jeopardy terminated for all charged alternative means. Double jeopardy bars retrial for the same crime absent "manifest necessity." A strategic decision by the State to instruct on only one alternative means falls well short of that.

¶73 I dissent.

ALEXANDER, C.J., and CHAMBERS, J., concur with SANDERS, J.